Robert Wayne NORTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–91–02143–CR.

Court of Appeals of Texas, Dallas.

Feb. 26, 1993.

Discretionary Review Refused June 16, 1993.

John H. Hagler, Dallas, for appellant.

Karen R. Wise, Dallas, for appellee.

Before BAKER, CHAPMAN and BARBER, JJ.

## OPINION

BAKER, Justice.

A jury convicted appellant of aggravated sexual assault. The jury found two enhancement allegations true and assessed a fifty-year sentence. Appellant contends the evidence was insufficient to convict him. He also contends that during jury arguments the prosecutor impermissibly commented on appellant's failure to testify. We find the evidence sufficient to support appellant's conviction. We conclude that the trial court erred by denying appellant's motion for mistrial. We hold the instruction to the jury did not cure the harmful effect of the State's improper comment on appellant's failure to testify. We reverse the trial court's judgment. We remand the cause for a new trial.

## SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

When we review a sufficiency of the evidence complaint, we view the evidence in the light most favorable to the verdict. We determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Turner v. State*, 805 S.W.2d 423, 427 (Tex. Crim.App.), *cert. denied*, —— U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985).

## B. Appellant's Contentions

Appellant contends the evidence is insufficient to support his conviction. He argues that the complainant consented to the sex acts alleged in the indictment. Appellant contends the record shows complainant consented because she: (1) had a past relationship with appellant; (2) admitted to habitual past use of drugs; (3) had given appellant a key to her apartment; (4) saw appellant's car in the parking lot but entered her apartment anyway; (5) received phone calls during the incident; (6) helped appellant put a mirror next to the bed; and (7) called appellant's mother the morning of the incident.

## C. The State's Contentions

The State argues that the evidence shows the complainant did not consent to the sex acts. The State concludes the evidence is sufficient to support appellant's conviction.

## D. Applicable Law

Section 22.021 of the Texas Penal Code provides:

(a) A person commits an offense:

(1) if the person:

(A) intentionally or knowingly:

. . . .

(ii) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent.

TEX. PENAL CODE ANN. § 22.021 (Vernon 1989).

The sexual assault is without consent if:

(1) the defendant compels the other person to submit or participate by the use of physical force or violence;

(2) the defendant compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat.

*See* TEX. PENAL CODE ANN. § 22.011 (Vernon Supp.1993).

## E. Application of the Law to the Facts

The complainant testified that she had known appellant for seven or eight years. During that time, she and appellant had dated and were engaged at one time.

One day appellant called the complainant at work and said he wanted to see her that night. She could tell by his voice that he had been using drugs that day. She told him she did not want to see him until he got his life straightened out. She told him she had plans. Her boss was spending the night with her. She was driving her boss to the airport the next morning.

That evening the two women went out to dinner and then returned to complainant's apartment. Appellant had left a message on the complainant's answering machine. Appellant wanted to see her and would call back. Appellant did not call back.

The next morning, the two women left for the airport. On the way out of the apartment complex, they saw appellant drive into the complex. Complainant took her boss to the airport. On the way back to her apartment, complainant had a minor automobile accident.

When she got back to her apartment, she saw appellant's car parked in the lot. She parked her car and went upstairs to her apartment. She found appellant lying on the couch. She had not invited appellant to her apartment. Appellant had a key to her apartment, but he lived with his mother. Appellant helped her move a mirror to the bedroom. Complainant had a telephone conversation with appellant's mother the morning of the offense.

Complainant went to her bedroom to get ready for work. Appellant approached her, placed a butcher knife to her throat, and told her to take off her clothes. He took her to the bedroom continuing to tell her to take off her clothes. He told her she was "going to die today." Appellant appeared angry and had a crazy look in his eyes. She took off her clothes. She begged appellant to put down the knife. Appellant continued to hold the knife in his hand and told her he was going to kill her.

Appellant was wearing only a tank top. Appellant forced her to perform oral sex on him. He told her he was going to do all the talking. She did what he said because he had the knife, and she was afraid he was going to kill her. This continued for three hours. Appellant then told her she had five minutes to perform a "kinky act" on him. Complainant was scared to death and could not perform the requested act. Appellant told her he was going to take her into the closet and beat her. Appellant then took her to the walk-in closet and beat her with a coat hanger and then a shoe. During these events, he continued to hold onto her. He still held the knife.

He then took her to the bedroom and tied her up. He used her panty hose to tie her hands and feet. She begged him to untie her. He cut the hose off using the butcher knife. He continued to make her perform oral sex on him. Appellant made her call her boss and tell her she would not be at work. Appellant ran the knife along complainant's back while making statements like, "You've heard of fatal attraction. Well, this is fatal obsession." He said he was going to kill her and then himself.

Complainant received two phone calls from coworkers who were concerned about complainant's automobile accident. Appellant was beside complainant holding the knife during the telephone conversations.

Appellant took complainant to the bathroom. He had the knife in one hand. She was afraid. They got into the tub together. Appellant told her he wanted her to use drugs with him. He called a friend to bring some drugs. She agreed in order to calm him down.

They went into the living room. He left the knife in the bathroom. Appellant and complainant had sexual intercourse on the couch. Complainant submitted because she was afraid appellant was going to kill her. When appellant used the telephone, the complainant ran out the front door. She was naked. She ran to the manager's office yelling "Help me. He's trying to kill me." Complainant was hysterical and asked the manager to call the police because appellant was going to kill her. The manager gave her a coat to wear and called the police.

### F. Conclusion

The evidence showed appellant held a butcher knife to complainant's throat and threatened to kill her if she did not do as he demanded. The evidence showed he forced her to perform oral sex on him, beat her with a coat hanger and a shoe when she refused to perform a "kinky act" on him, and tied her hands and feet with her panty hose. The evidence showed she feared for her life and escaped by running out of her apartment to get help.

When we consider all the evidence, we conclude the jury could find that complainant did not consent to appellant's advances. When viewed in the light most favorable to the verdict, we find that a rational trier of fact could have found appellant guilty of aggravated sexual assault. We overrule appellant's first point of error.

### IMPROPER JURY ARGUMENT

During jury arguments, the prosecutor argued:

[PROSECUTOR]: May it please the Court. It's amazing to me that anyone would want to go through this. This is a serious, serious, serious crime. This is a first-degree felony. It's real serious alright, and guess who knows that? Montie Smith [the complainant].

Don't feel sorry for him. Not one bit. Let's talk about the facts. No supposition. Let's talk about the facts. *There were only two people there and we heard from one of them.* Let's remember what she told us.

[DEFENSE COUNSEL]: Your Honor, I'm going to object to that as being a comment on the Defendant's failure to testify.

THE COURT: I'll sustain.

[DEFENSE COUNSEL]: Your Honor, I'm going to ask that the jury be instructed to disregard that.

THE COURT: Folks, disregard that last argument and do not consider that as any evidence and follow the court's in-

structions in regard to that particular matter.

[DEFENSE COUNSEL]: Respectfully, your Honor, in view of that, I'm going to ask for a mistrial.

THE COURT: I'll deny that. Go ahead.

[PROSECUTOR]: Let's talk about what she said. First the man, Robert Norton. We know that man used drugs....

(Emphasis added.)

### A. Appellant's Contentions

Appellant argues the prosecutor's statement was a direct comment on appellant's failure to testify. He contends the argument called for testimony that only the defendant could have supplied. Appellant contends the argument constituted a comment on his failure to testify and was harmful. He argues that the trial court's failure to grant a mistrial was reversible error.

### B. The State's Contentions

The State argues that the trial court cured the error in the prosecutor's jury argument by the prompt instruction to the jury to disregard the argument. The State also contends the argument was harmless. The State contends the record shows the prosecutor did not emphasize improper argument after the court sustained appellant's objection. The State also contends that argument was a response to defense counsel's repeated claims that the complainant was lying and it was not appellant's fault.

### C. Applicable Law

■ Proper jury argument is: (1) a summary of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to the opponent's argument; or (4) a plea for law enforcement. *Long v. State*, 823 S.W.2d 259, 267 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992).

■ A prosecutor's comment on a defendant's failure to testify offends both the state and federal constitutions as well as Texas statutory law. *See* U.S. CONST. amend. V, TEX. CONST., art. I, § 10; TEX. CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979).

■ To violate the right against self-incrimination, the argument, when viewed from the jury's standpoint, must manifestly be intended or be of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. It is not enough that the jury might construe the language as an implied or indirect allusion to the defendant's failure to testify. If the remark called the jury's attention to the absence of evidence that only a defendant's testimony could supply, the conviction is subject to reversal. *Montoya v. State*, 744 S.W.2d 15, 35 (Tex.Crim.App.1987) (op. on reh'g), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988).

Our court of criminal appeals has often held that the prohibition against commenting on a defendant's silence at trial is mandatory and thus rarely cured by instruction. *See Owen v. State*, 656 S.W.2d 458, 459 (Tex.Crim.App.1983); *Bird v. State*, 527 S.W.2d 891, 894 (Tex.Crim.App.1975); *Overstreet v. State*, 470 S.W.2d 653, 655 (Tex.Crim.App.1971); TEX.CODE CRIM.PROC. ANN. art. 38.08 (Vernon 1979). However, in more recent cases, that court has made it clear that violation of article 38.08 is not automatically reversible error. *See Madden v. State*, 799 S.W.2d 683, 699 n. 28 (Tex.Crim.App.1990). The reviewing court, if it determines the argument is improper, must perform a harm analysis. *Madden*, 799 S.W.2d at 690.

■ When an objection is sustained and the trial court instructs the jury but denies a defendant's motion for a new trial, the question is whether the trial court erred in denying the mistrial. To determine whether error is reversible, we consider whether the argument was extreme, manifestly improper, injects new and harmful facts into the case, or violates a mandatory statutory provision and thus is so inflammatory that instructions to disregard the argument cannot cure its prejudicial effect. *Long*, 823 S.W.2d at 267; *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex.Crim.App.1991), *cert.*

*denied,* — U.S. —, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992). We examine the argument in light of the entire record. *Hernandez,* 819 S.W.2d at 820.

### D. Application of the Law to the Facts

■ Appellant did not testify during the trial. His theory of the case was that the complainant consented to the acts alleged in the indictment. The record shows that the complainant and appellant were the only two parties present during the time of the alleged offense. The State argues that the trial court's instruction to the jury cured the error and that the State's argument was in response to appellant's argument.

Appellant argued to the jury that: complainant was lying; it was not appellant's fault; and the jury could not know what happened because the complainant did not tell the truth. The State concludes that because of these comments, the jury would not naturally and necessarily take the statement by the prosecutor as a comment on the defendant's failure to testify. We disagree.

The statement, "There were only two people out there and we heard from one of them," is a direct comment on the accused's failure to testify. The argument called the jury's attention to the absence of evidence that only appellant's testimony could supply. The comment violates a mandatory Texas statute. *See* TEX.CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979). It was so inflammatory that the court's instruction to the jury to disregard did not cure the error. *Long,* 823 S.W.2d at 267. We sustain appellant's second point of error.

We reverse the trial court's judgment. We remand the cause to the trial court for a new trial.