Kenneth Mark BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–01–01326–CR.

Court of Appeals of Texas,
Dallas.

Dec. 19, 2002.

Roger V. Dickey, McKinney, Randy Schaffer, Houston, Jerry Cobb, Philips, Hopkins, Eames & Cobb, P.C., Denton, for Appellant.

Tom O'Connell, Criminal District Attorney, John A. Stride, Assistant District Attorney, McKinney, for State.

Before Justices BRIDGES, FITZGERALD, and LAGARDE.[1]

## OPINION

Opinion By Justice FITZGERALD.

Kenneth Mark Brown appeals his conviction for capital murder. After the jury found appellant guilty, the trial court sentenced appellant to life imprisonment. Appellant brings six points of error con-

tending the evidence is legally insufficient and that the trial court erred by: (a) admitting appellant's oral statement; (b) overruling appellant's motions for mistrial; and (c) incorrectly charging the jury. We affirm appellant's conviction.

## FACTUAL BACKGROUND

In March 2000, appellant was separated from his wife, Katrina, who had custody of their young daughter, Courtney. Appellant knew Katrina was dating a fireman, Theron Gray, and that she was pregnant with Gray's child. On March 28, 2000, after work, appellant and some friends from work went to a strip club. After hearing that bad weather was ravaging the Dallas/Fort Worth area, including a tornado in Fort Worth, the men called home to see that their families were safe. Appellant called Katrina and learned that Gray was in her apartment with her. When appellant returned to the table, he told his friends that he thought someone was at his wife's house, and he said, "I can't believe this, it sucks, this is B.S." After a period of time, appellant said goodbye to his friends and left the club.

Appellant went to his apartment, opened the door so violently that he damaged it, and went to his bedroom without saying a word to his roommate, Chris Morrow. After a few minutes, appellant left without speaking to Morrow. Morrow went to appellant's room and noticed that appellant's gun was missing. Morrow telephoned appellant's father, and they decided they should go to Katrina's apartment and tell her about appellant. Morrow got to Katrina's apartment about an hour after appellant had left his apartment. Morrow asked Katrina if appellant was there, and she told him he was not there. She told

---

**1.** Justice Ed Kinkeade was a member of the submissions panel before his retirement from the Court on November 18, 2002. Justice

Sue Lagarde, Retired Justice, is sitting by assignment, and she has reviewed the briefs and the record in this case.

Morrow she was all right, and she would not allow him into her apartment. Morrow did not think appellant would actually use the gun, so he left without warning Katrina that appellant might be armed.

Meanwhile, appellant had crashed his vehicle on the way to Katrina's apartment. He abandoned the vehicle and began walking down the highway. A passing motorist, William Orender, stopped and gave appellant a ride to a gas station near Katrina's apartment. Orender testified appellant seemed preoccupied during the trip but that he was very calm and not upset. Appellant arrived at Katrina's door a few minutes after Morrow had left. Appellant knocked on Katrina's door. Katrina thought Morrow had returned, and she opened the door slightly to tell him to go away. When she opened the door, appellant put his arm and leg in the doorway and tried to force his way in. Katrina screamed for help, and Gray came to the door and helped her try to prevent appellant from entering. Appellant said, "Are you ready to die?" and Katrina ran upstairs to call the police, leaving Gray to push the door closed. As she ran up the stairs, she heard a gunshot and saw Gray fall to the floor. Appellant's shot went through the door and then passed through Gray's head, rendering him immediately unconscious and quickly killing him.

Katrina's neighbor, Chris Daigle, heard the gunshot and then heard appellant say, "How does it feel to know you're about to die?" After appellant fired the gunshot through the door, Katrina called 911, and she heard two more gunshots. The telephone line went dead, and she saw appellant standing over her with the telephone cord pulled out of the wall. Katrina ran downstairs to check on Gray and saw that he was still breathing but that blood was coming from his nose and mouth. Appellant ordered Katrina upstairs and yelled at her, asking her why she chose Gray over him and why she could not love him. Appellant looked down the stairs at Gray's body lying by the door and yelled at him, "You're not going to raise my daughter, you fucking ... shit hole." Appellant told Katrina he was going to kill himself, he put the gun in his mouth, and he pulled the trigger twice; however, the gun did not fire. Appellant said, "Oh, shit," and he started to unload the gun. Katrina went into Courtney's bedroom, opened the window, pushed out the screen, and lowered Courtney and herself to the policemen standing below the window.

A few minutes later, the officer stationed at the front door of the apartment saw the door open a few inches and appellant standing in the doorway. The officer shouted for appellant to show his hands, and appellant put his hands and arms, holding the gun in his right hand, out the door. The officer had to shout several times to drop the gun before appellant complied and threw the gun out the door. Appellant came outside and was taken into custody. As the police handcuffed him, he told them, "I'm not going to hurt you guys. I've already killed everyone I wanted to kill."

## SUFFICIENCY OF THE EVIDENCE

■ In his sixth point of error, appellant contends the evidence is legally insufficient to support his conviction because, appellant argues, when the State alleges capital murder in the course of committing burglary, the State may not use the same murder as the felony supporting the burglary and the charged murder. The court of criminal appeals has rejected this argument, and this Court is bound by the court of criminal appeals' holding. *See Homan v. State*, 19 S.W.3d 847, 849 (Tex.Crim. App.2000). Accordingly, appellant's argument that the evidence is legally insuffi-

cient lacks merit. We overrule appellant's sixth point of error.

## ORAL STATEMENT

In his first point of error, appellant contends the trial court erred in overruling his objection to the admission of appellant's statement to the officers that he had killed everyone he wanted to kill. In *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim. App.1997), the court of criminal appeals explained that the standard of review of a motion to suppress evidence depends on the type of question presented. It recognized three types of questions: (1) historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor; (2) application of law to fact questions, *i.e.*, mixed questions of law and fact, when the ultimate resolution of those questions turns on an evaluation of credibility and demeanor; and (3) mixed questions of law and fact when the resolution of those questions does not turn on an evaluation of credibility and demeanor. *See Loserth v. State*, 963 S.W.2d 770, 772 (Tex. Crim.App.1998); *Guzman*, 955 S.W.2d at 89. In reviewing the first two types of questions, an appellate court shows "almost total deference" to a trial court's determination because of a trial court's exclusive fact-finding role and because a trial court is in an appreciably better position to decide the issue. *See Guzman*, 955 S.W.2d at 89. In reviewing the third type of question, where the resolution of the issue does not turn on an evaluation of credibility and demeanor, an appellate court is in as good a position to review the issue as the trial court; therefore, an appellate court determines the issue independently, or *de novo. See id.; Lane v. State*, 971 S.W.2d 748, 751–52 (Tex.App.-Dallas 1998, pet. ref'd). In this case, the issue does not turn on an evaluation of credibili-

ty and demeanor; accordingly, we review the issue *de novo*.

■ Appellant objected to admission of his statement to the officers because it was unrecorded, it was a product of custodial interrogation, and it was made before appellant had received the mandatory admonishments. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon Supp.2003). The trial court held a hearing outside the presence of the jury to determine the admissibility of the statement. Lieutenant Harry Manning testified he was patting down appellant when appellant made the statement and that the statement was not in response to a question. Officer Michael Glisch testified appellant made the statement in response to Manning's question, "Do you have anything in your pockets?" After originally sustaining appellant's objection to the admissibility of the statement, the trial court later changed its ruling and overruled appellant's objection.

Article 38.22, section 3(a) prohibits the admission of oral statements by a defendant unless (1) a visual recording is made of appellant making the statement; (2) the defendant is given the *Miranda* warnings; (3) the recording equipment is operating, the operator is competent, and the recording is accurate and has not been altered; and (4) all material voices are identified. *Id.* Article 38.22, section 5 permits the admission of an unrecorded oral statement by the defendant when the statement "is the res gestae of the arrest." *Id.* art. 38.22, § 5 (Vernon 1979). Clearly, appellant's statement, as he was lying on the ground being handcuffed and searched, was res gestae of his arrest. *Bryant v. State*, 816 S.W.2d 554, 556 (Tex.App.-Fort Worth 1991, no pet.). That appellant had not received the *Miranda* warnings at the time he made the statement or that the statement was in response to a police officer's question does not prohibit admission

of the statement. *Jones v. State,* 458 S.W.2d 654, 655 (Tex.Crim.App.1970); *Bryant,* 816 S.W.2d at 556–57; *Smith v. State,* 737 S.W.2d 933, 940 (Tex.App.-Dallas 1987, pet. ref'd). Thus, the statement was admissible under section five of article 38.22.

We conclude the trial court did not err in overruling appellant's objection to the admission of this statement. We overrule appellant's first point of error.

### THOMAS GRAY'S STATEMENT

 In his second point of error, appellant contends the trial court erred by denying his motion for mistrial. Thomas Gray, Theron Gray's father, was the last witness to testify. After Thomas Gray had answered the prosecutor's last question, the following occurred:

> [Prosecutor]: Thank you, Mr. Gray. We're going to go ahead and pass this witness, Your Honor.
>
> [Defense Counsel]: No questions.
>
> The Court: Thank you, sir.
>
> The Witness: Give my son justice, please.
>
> [Defense Counsel]: I object to the—
>
> The Court: Mr. Gray, unfortunately, that's out of line. All right, call your next witness.
>
> [Defense Counsel]: I'll ask the jury be instruct[ed] to disregard.
>
> The Court: The jury will disregard.
>
> [Defense Counsel]: Move for a mistrial.
>
> The Court: Overruled.

Appellant presented evidence that Thomas Gray, also a firefighter, wore his dress fireman's uniform when he testified and that he cried and sobbed during his testimony. He made the statement, "Give my son justice, please," while looking at the jury, and it was "a forceful statement."

Appellant never stated the grounds for either his original objection or for his motion for mistrial. Therefore, appellant has not preserved any error from the denial of the motion for mistrial for our review. Tex.R.App. P. 33.1(a)(1). However, in the interest of justice, we consider appellant's arguments on appeal.

 We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *See Ladd v. State,* 3 S.W.3d 547, 567 (Tex.Crim.App.1999). Mistrial is a device used to halt trial proceedings when the error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *See id.* To determine whether a given error necessitates a mistrial, we must examine the particular facts of the case. *See id.* A mistrial is required only when the impropriety is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury. *See Hinojosa v. State,* 4 S.W.3d 240, 253 (Tex.Crim.App.1999). An outburst by a witness or other bystander "will not result in reversible error unless the defendant shows that a reasonable probability [exists] that the conduct interfered with the jury's verdict." *Stahl v. State,* 749 S.W.2d 826, 829 (Tex.Crim.App. 1988) (quoting *Landry v. State,* 706 S.W.2d 105, 112 (Tex.Crim.App.1985)).

 Appellant argues that this case is similar to that in *Stahl v. State.* In that case, a murder trial, a mother had to identify her dead son from a morgue photograph. *Id.* at 828. Before she testified, the trial court admonished her not to show any emotion when identifying her son. She told the trial court she would try not to show emotion, but "I can't say what's going to happen." *Id.* While testifying, the prosecutor asked her to identify the person depicted in an exhibit, and she

cried out, "Oh, my God. My baby. My God." *Id.* The defense attorney asked to have the jury removed, but before the jury left the courtroom, the woman said, "May he rest in hell. May he burn in hell. Oh, my baby." *Id.* During the hearing following the witness's outburst, it became apparent the prosecutor expected the witness to have some type of emotional response in front of the jury. *Id.* at 829–30. The court of criminal appeals noted that during jury argument, the prosecutor "sought to exacerbate its impact on the jury." *Id.* at 830. The court of criminal appeals held that the witness's outburst, together with the prosecutorial misconduct, was harmful error and warranted a new trial. *Id.* at 831.

The facts of this case are not analogous to those in *Stahl.* In this case, the improper statement was not in response to a question from the prosecutor but occurred after the witness had been excused from the witness stand. Although the witness was crying during his testimony, he answered the questions appropriately, and appellant's only objection to his testimony was that one of the answers was in narrative form. Unlike the prosecutor in *Stahl,* nothing in the record shows the prosecutor in this case expected the witness to make the improper statement after the witness was excused from the witness stand. The witness's improper statement, "Give my son justice, please," although forceful, was not the powerful personal attack on the defendant like that of the mother in *Stahl,* "May he burn in hell." *Id.* at 828. Finally, unlike the prosecutor in *Stahl,* the prosecutor in this case did not seek "to exacerbate its impact on the jury." *Id.* at 830. We conclude *Stahl* is distinguishable from this case and does not show the trial court abused its discretion in denying appellant's motion for mistrial.

Appellant argues Thomas Gray's testimony was unnecessary to the State's case. Appellant never objected at trial to the testimony on this ground. Even if any error were preserved, the relevance of the testimony does not affect the issue before us: whether Thomas Gray's statement after the completion of his testimony "interfered with the jury's verdict." *Id.* at 829 (quoting *Landry,* 706 S.W.2d at 112).

■ Appellant also argues the trial court's instruction to disregard was too perfunctory to cure the harm from Thomas Gray's inappropriate statement. We disagree. The trial court's instruction to disregard was immediate and instructed the jury to disregard. Appellant did not request any further instruction to the jury. We presume the jury followed the trial court's instruction to disregard. *Wesbrook v. State,* 29 S.W.3d 103, 116 (Tex.Crim. App.2000). "Only offensive or flagrant error warrants reversal when there has been an instruction to disregard." *Id.* Thomas Gray's statement was neither so offensive nor so flagrant that the trial court's immediate reprimand of the witness and the instruction to the jury to disregard could not have cured the error.

■ Appellant also argues the trial court's use of the word "unfortunately" in reprimanding Thomas Gray compounded the harm by suggesting the court believed the law should permit a parent of the deceased to make a personal plea to the jury for justice. Even assuming counsel's interpretation of the trial court's use of the word "unfortunately" were correct, appellant would have had to object to the trial court's comment to preserve error for our review. *See Blue v. State,* 41 S.W.3d 129, 131 (Tex.Crim.App.2000) (objection required to preserve error from trial court's comment unless the error is fundamental affecting a substantial right such as the presumption of innocence). Appellant

does not assert, and we do not perceive, that the trial court's use of the word "unfortunately" affected such a substantial right of appellant as the presumption of innocence. Accordingly, any error by the trial court in using the word "unfortunately" was not preserved for our review.

After reviewing the record, we conclude the record does not show Thomas Gray's statement to the jury asking for justice for his son affected the jury's verdict. Accordingly, we hold appellant has not preserved any error for review, and, even if any error were preserved, appellant has not shown the trial court abused its discretion by denying appellant's motion for mistrial. We overrule appellant's second point of error.

## JURY CHARGE

In his third point of error, appellant contends the trial court commented on the weight of the evidence by instructing the jury that it could infer appellant's intent from his acts done and words spoken. In *Cain v. State*, 549 S.W.2d 707 (Tex.Crim. App.1977), *overruled on other grounds by Harrell v. State*, 659 S.W.2d 825, 826 (Tex. Crim.App.1983), the court of criminal appeals stated an instruction "that intent may be inferred from acts done, if any, or words spoken, if any" avoided commenting on the weight of the evidence. *Id.* at 715. However, the Fort Worth, San Antonio, and Texarkana Courts of Appeals have declared such an instruction to be a comment on the weight of the evidence in violation of article 36.14 of the code of criminal procedure. *Ward v. State*, 72 S.W.3d 413, 418 (Tex.App.-Fort Worth 2002, no pet.); *Lam v. State*, 25 S.W.3d 233, 240 (Tex.App.-San Antonio 2000, no pet.); *Peterson v. State*, 942 S.W.2d 206, 207–08 (Tex.App.-Texarkana 1997, pet. ref'd); *see also* TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2003) ("[I]n each

felony case . . ., the judge shall, before the argument begins, deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence. . . ."). The courts of appeals' opinions are based on a series of opinions from the court of criminal appeals.

In *Browning v. State*, 720 S.W.2d 504 (Tex.Crim.App.1986), the defendant was tried for burglary of a habitation. The jury charge instructed the jury that if it found the defendant had broken into and entered the building at nighttime, then "the defendant's intent to commit theft may be presumed from these facts, but you are not bound to so find." *Id.* at 507. The court explained the defect in such an instruction as follows:

> The jury was instructed that though they were not bound to so find, they *could* find appellant's intent to commit theft by finding only that he had entered the home at night, a fact appellant did not dispute. The jury was instructed, in other words, that they could ignore appellant's defensive evidence altogether. In giving such an instruction the trial court improperly commented on the weight to be given each party's evidence.

*Id.* at 507–08. One month later, in *Mercado v. State*, 718 S.W.2d 291 (Tex.Crim.App. 1986), an attempted murder case, the court of criminal appeals discussed the effect of instructing the jury that it could presume the defendant's intent to kill from the use of a deadly weapon. *Id.* at 292–93. The court of criminal appeals stated this jury instruction suffered the same defect as the jury instruction in *Browning*. "By singling out one reasonable inference, the trial court erred by improperly commenting on the weight of the evidence." *Id.* at 293. Ten years later, in *Garcia v. State*, 919 S.W.2d 370 (Tex.Crim.App.1994) (opinion on reh'g, issued Mar. 27, 1996), a capi-

tal murder case, the defendant argued the trial court commented on the weight of the evidence by instructing the jury that "intent or knowledge may be inferred by acts done or words spoken." *Id.* at 396. The court of criminal appeals did *not* rule on the merits of the defendant's argument; the court "assum[ed], arguendo, that it was error to include the complained-of words in the jury charge," and held "that any error in including the words in the jury charge at the guilt/innocence phase to which appellant objects is harmless beyond a reasonable doubt." *Id.* at 396–97.

In *Peterson v. State*, the Texarkana court considered whether the jury instruction, "Knowledge, or lack of knowledge, may be inferred from the facts and circumstances," constituted a comment on the weight of the evidence. The Texarkana court discussed *Browning* and noted that in *Garcia*, the court of criminal appeals had assumed the instruction in *Garcia* was error. *Peterson*, 942 S.W.2d at 207–08. Without further analysis, the Texarkana court concluded, "We are therefore constrained to hold that the charge here was an improper comment on the weight of the evidence." *Id.* at 208.

In *Lam v. State*, the trial court instructed the jury "that intent may be inferred from acts done, if any, or words spoken, if any." *Lam*, 25 S.W.3d at 240. The San Antonio court observed that in *Garcia*, the court of criminal appeals had assumed it was error for the trial court to so instruct the jury. *Id.* The court of appeals then stated, "Following the implicit holding of *Garcia*, we find that the challenged instruction in the instant case constituted an impermissible comment on the weight of the evidence, and therefore, we conclude the trial court erred in submitting it to the jury." *Id.*

In *Ward v. State*, the trial court instructed the jury, "A person's mental state may be inferred from words spoken and acts done." *Ward*, 72 S.W.3d at 417 (emphasis omitted). The Fort Worth court observed that the *Garcia* court did not hold this type of instruction was erroneous "but rather assumed that it was, and proceeded to conduct a harm analysis." *Id.* The Fort Worth court considered the court of criminal appeals' decision in *Browning* and then stated,

> Thus, while the court of criminal appeals has not held that the precise instruction challenged in the case now before us constitutes a comment on the weight of the evidence, we nevertheless find that it is sufficiently similar to the language that the court has held to be erroneous to cause concern. Taken in the context in which it was given, the instruction improperly tells the jury how to consider certain evidence before it. While it is indeed permissible for a jury to infer mental culpability from an accused's acts, words, and conduct, the trial court may not instruct the jury that it may apply such an inference.

*Id.* at 418.

We respectfully disagree with these three courts of appeals that an instruction to the jurors that they may infer a defendant's intent from his acts done and words spoken comments on the weight of the evidence. These three courts rely on *Browning* and its progeny, and the Texarkana and San Antonio courts also rely on *Garcia*. As the Fort Worth court observed, the court of criminal appeals in *Garcia* did not hold, expressly or implicitly, that such an instruction comments on the weight of the evidence. *See Ward*, 72 S.W.3d at 417. Thus, we must determine whether *Browning* and its progeny support holding an instruction that the jury may infer a defendant's intent from his acts done and words spoken comments on the weight of the evidence.

■ The instructions in *Browning* and *Mercado,* that the jury may presume intent to commit theft from breaking and entering a building at nighttime, or it may presume intent to kill from use of a deadly weapon, were comments on the weight of the evidence because they instructed the jurors that if they found a specific set of facts, they could presume the State had met its burden of proof as to one of the elements regardless of the rest of the evidence. *See Browning,* 720 S.W.2d at 507–08; *Mercado,* 718 S.W.2d at 293; *see also Alexander v. State,* 757 S.W.2d 95, 98–99 (Tex.App.-Dallas 1988, pet. ref'd) (instruction similar to that in *Browning* deprived defendant of due process because "it removes the presumed element from the case once the State has proved the predicate facts giving rise to the presumption"). The instruction in this case, "Intent or knowledge may be inferred by [sic] acts done or words spoken," does not instruct on a presumption. It does not "singl[e] out one reasonable inference." *Mercado,* 718 S.W.2d at 293. It does not inform the jury that any *specific* words or acts could prove appellant had the requisite intent. Thus, we conclude *Browning* and its progeny do not support a holding that the instruction given in this case commented on the weight of the evidence.

We hold the trial court did not err in instructing the jurors that they could infer appellant's intent from his acts done and words spoken. We overrule appellant's third point of error.

## JURY ARGUMENT

■ In his fourth point of error, appellant contends the trial court erred by denying a mistrial after the prosecutor commented on appellant's failure to testify. The defendant's state and federal constitutional and statutory right not to be a witness against himself prohibits the State from commenting on the defendant's failure to testify. *See* U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex.Code Crim. Proc. Ann. art. 38.08 (Vernon 1979); *Montoya v. State,* 744 S.W.2d 15, 35 (Tex.Crim. App.1987) (opinion on reh'g), *overruled on other grounds by Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim.App.1996); *Sauceda v. State,* 859 S.W.2d 469, 474 (Tex.App.-Dallas 1993, pet. ref'd). The reviewing court considers the comment from the standpoint of the jury. *See Swallow v. State,* 829 S.W.2d 223, 225 (Tex.Crim.App. 1992); *Sauceda,* 859 S.W.2d at 474. For the prosecutor's argument to violate the defendant's right against self-incrimination and be reversible error, the argument must do more than merely imply or indirectly allude to the defendant's failure to testify; the argument must be manifestly intended or be of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. *See Montoya,* 744 S.W.2d at 35; *Sauceda,* 859 S.W.2d at 474. Language that can reasonably be construed to refer to a failure to present evidence other than from the defendant's own testimony does not comment on the defendant's failure to testify. *See Swallow,* 829 S.W.2d at 225. However, argument that points to a lack of evidence that only the defendant personally can supply violates the defendant's right against self-incrimination. *See id.; Sauceda,* 859 S.W.2d at 474. Accordingly, jury argument asserting the evidence is "undisputed" comments on the defendant's failure to testify when the defendant is the only person who could have disputed the State's evidence. *Carrillo v. State,* 821 S.W.2d 697, 699 (Tex.App.-Dallas 1991), *pet. ref'd,* 826 S.W.2d 955 (Tex.Crim.App. 1992) (per curiam).

During the prosecutor's jury argument, the following occurred:

> [Prosecutor]: Murder is defined . . . as, "intentionally or knowingly causes the

death of an individual." There is no disputing here that this man, Kenneth Mark Brown, intentionally caused the death of an individual, specifically, Theron Gray, the victim in this case.

[Defense Counsel]: Your Honor, object to [sic] as being a comment on the defendant's failure to testify.

The Court: Well, the jury's been instructed on that already. Just don't make any comment about that.

[Defense Counsel]: Your Honor, could we have a ruling on my objection, please?

The Court: I'll sustain the objection as to not making any more references to it.

[Defense Counsel]: Your Honor, ask for an instruction to disregard the last statement.

The Court: The jury will disregard the last statement.

[Defense Counsel]: Ask for a mistrial.

The Court: Overruled.

Appellant argues the prosecutor's argument, "there is no disputing ... Brown intentionally caused the death of ... Theron Gray," commented on appellant's failure to testify because it asserted appellant's intent was undisputed and appellant was the only person who could counter the State's evidence of his intent.[2]

Appellant cites four cases in which prosecutors' statements that evidence was undisputed were held to be comments on the appellants' failure to testify. *See United*

States v. Cotnam, 88 F.3d 487, 493, 499 (7th Cir.1996) (prosecutor argued evidence "uncontroverted"); *Angel v. State*, 627 S.W.2d 424, 425–26 (Tex.Crim.App. [Panel Op.] 1982) (prosecutor argued evidence "not contested"); *Pollard v. State*, 552 S.W.2d 475, 476–77 (Tex.Crim.App.1977) (prosecutor argued, "No one contradicts" complainant's testimony); *Carrillo*, 821 S.W.2d at 699 (prosecutor argued, "It's simple, it's not been uncorroborated evidence, it's not been disputed, it's just a simple case."). In each of these cases, the undisputed evidence concerned criminal transactions in which the defendant and one other person were the only participants.[3] *See Cotnam*, 88 F.3d at 499 (undisputed evidence concerned discussions between the defendant and co-conspirator); *Angel*, 627 S.W.2d at 426 (uncontested evidence was that defendant exposed himself to complainant when no one else was present); *Pollard*, 552 S.W.2d at 476–77 (uncontradicted evidence was that defendant carried a tire iron when he approached complainant's car; no witnesses other than complainant to this fact); *Carrillo*, 821 S.W.2d at 699 (undisputed evidence was of a drug transaction between defendant and undercover policeman with no other witnesses to the transaction). In the context of those cases, the prosecutors' arguments pointed to an absence of evidence that could have been supplied only by the defendants.

Unlike the cases cited by appellant, the prosecutor's argument in this

---

2. At the outset, we note that appellant's objection at trial was not nearly as specific as his complaint on appeal. Appellee has not raised this concern, and the trial court did sustain the objection (at least "as to not making any more references to it"), so we resolve this issue on substantive grounds. However, we note our concern with the lack of specificity of the trial objection.

3. Appellant also cites *Norton v. State*, 851 S.W.2d 341 (Tex.App.-Dallas 1993, pet. ref'd). In that case, the prosecutor argued, "Let's talk about the facts. There were only two people there and we heard from one of them." *Id.* at 344. This argument was clearly a direct comment on the defendant's failure to testify. *Id.* at 346. In this case, the prosecutor made no such statement. *Norton* is clearly distinguishable.

case did not draw the jury's attention to an absence of evidence that could have been supplied only by the defendant. It is true that only appellant could have offered direct evidence of his intent, but this is the case in every criminal prosecution. Only the defendant knows for certain what is in his own mind. As a result, our system relies routinely upon circumstantial evidence of a defendant's intent. *See e.g.,* *Maldonado v. State,* 998 S.W.2d 239, 243 (Tex.Crim.App.1999); *Wolfe v. State,* 917 S.W.2d 270, 275 (Tex.Crim.App.1996); *Jones v. State,* 34 Tex.Crim. 490, 492, 30 S.W. 1059, 1060 (1895); *Davis v. State,* 68 S.W.3d 273, 277 (Tex.App.-Dallas 2002, pet. ref'd). Thus, jury argument concerning intent will not be inherently erroneous as a comment on a defendant's failure to testify so long as circumstantial evidence of intent exists.

■■■ In this case, many witnesses testified about appellant's words and actions from the time he learned Gray was at Katrina's apartment until the time he was taken into custody. All of this testimony is evidence of appellant's intent. Indeed, appellant's intent to kill Gray was evidenced by his shouting, "Are you ready to die," and shooting through the door knowing Gray was on the other side of the door trying to push it closed. Appellant's intent was also evidenced by his saying to Gray, "How does it feel to know you're going to die," shooting Gray two more times, and telling the arresting officer he had killed everyone he wanted to kill. The prosecutor's argument that there "is no disputing" appellant intentionally killed Gray was a reasonable deduction from the testimony of appellant's co-workers, Morrow, Orender, Daigle, Katrina, Manning, and Glisch about appellant's words and actions. Viewing the argument from the jury's per-

spective, we conclude the argument drew the jury's attention to the overwhelming evidence of appellant's intent to kill Gray and not to an absence of evidence that only appellant could have supplied. Thus, from the jury's perspective, the objected-to argument was not manifestly intended or of such a character that the jury would necessarily and naturally take it as a comment on appellant's failure to testify.

Moreover, the unusual posture of the defense in this case also supports the conclusion that the objected-to argument was not an inappropriate comment on the defendant's failure to testify. Throughout the trial, appellant's counsel's efforts were directed toward obtaining a verdict of murder as opposed to capital murder for appellant. Appellant's counsel made potential jurors aware in voir dire that to find appellant guilty of capital murder, they had to find appellant had the specific intent to kill Gray.[4] Similarly, during the opening statement, appellant's counsel conceded, "there will be no question" appellant fired the shot that killed Gray. However, appellant's counsel closed his opening statement by stating, "Nowhere is it legally going to be proven by the State that a capital murder occurred," *i.e.,* there will be no evidence appellant specifically intended to kill Gray. During closing argument, appellant's counsel summarized the evidence during the trial and argued, "No specific intent to kill.... And that's what makes this case murder as opposed to capital murder." When the prosecutor recited the definition of murder and then echoed its language in her argument that "[t]here is no disputing here that this man, Kenneth Mark Brown, intentionally caused the death of an individual, specifically, Theron Gray, the victim in this case," she was making reasonable deductions from the ev-

---

**4.** Counsel spoke to the panel "hypothetically" about a defendant who fired through a door when explaining to them the requirement of specific intent to commit a crime.

idence that appellant's counsel had made a number of times. Read in the context of the trial as a whole, the prosecutor's statement was not intended to comment on appellant's failure to testify any more than appellant's counsel's own statements commented on appellant's failure to testify.[5]

We conclude the prosecutor's argument was not a comment on appellant's failure to testify. Accordingly, we hold appellant has not shown the trial court abused its discretion by denying his motion for mistrial.

■■■■■ However, even if the argument were a comment on appellant's failure to testify, we would still conclude the trial court did not abuse its discretion by denying appellant's motion for mistrial because the trial court's prompt instruction to disregard cured any error. As the court of criminal appeals has stated, "the . . . presumption that an instruction [to disregard] generally will not cure [a] comment on [the] failure of the accused to testify . . . has been eroded to the point that it applies only to the most blatant examples. Otherwise, the Court has tended to find the instruction to have force." *Moore v. State,* 999 S.W.2d 385, 405 (Tex.Crim.App.1999) (quoting *Waldo v. State,* 746 S.W.2d 750, 753 (Tex.Crim.App.1988)). Whether the instruction cured the error is essentially a harmless-error determination. *See Hough v. State,* 828 S.W.2d 97, 100 (Tex.App.-Beaumont 1992, pet. ref'd) (citing *Orona v. State,* 791 S.W.2d 125, 128 (Tex.Crim.App. 1990) (former rule of appellate procedure 81(b)(2) [now Tex.R.App. P. 44.2(a) ] is standard of review for erroneous jury argument)). Thus, whether the instruction to disregard cured a violation of appellant's constitutional right against self-incrimination, and whether the trial court

should have granted appellant's motion for mistrial, requires us to determine beyond a reasonable doubt if the comment on appellant's failure to testify contributed to his conviction. *See* Tex.R.App. P. 44.2(a); *Hough,* 828 S.W.2d at 100.

■■■■■ In determining whether the State's jury argument contributed to appellant's conviction, we review the entire record in a neutral light and not in the light most favorable to the verdict. *Hernandez v. State,* 80 S.W.3d 63, 65 (Tex. App.-Amarillo 2002, no pet.); *Daniels v. State,* 25 S.W.3d 893, 899 (Tex.App.-Houston [14th Dist.] 2000, no pet.). We consider the impact of the error on the jury, including whether there is overwhelming evidence of appellant's guilt. *Motilla v. State,* 78 S.W.3d 352, 358 (Tex.Crim.App. 2002). We must determine "if there was a reasonable possibility that the error, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion as to the issue in question." *Wesbrook,* 29 S.W.3d at 119. "If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt." *McCarthy v. State,* 65 S.W.3d 47, 55 (Tex.Crim.App.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 2693, 153 L.Ed.2d 862 (2002).

■■■■ The jurors were aware that appellant had not testified. In addition, the trial court read them the jury charge before arguments began. Included in the jury charge was the following instruction:

> Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a privilege accorded a defendant, and, in the event he elects not to testify, that fact cannot

---

5. We note that the prosecutor did not read the definition of felony murder to the jury, which would have been more appropriate in this instance. However, appellant did not object to that portion of the closing argument.

be taken as a circumstance against him. *In this case, the defendant has elected not to testify,* and you are instructed that you cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against the defendant.

(Emphasis added.) After sustaining appellant's objection to the argument, the trial court instructed the jurors to disregard the prosecutor's statement.[6] "This Court has faith in the jury's ability to recognize, upon instruction, the potential for prejudice and to discount any prejudice during deliberations." *Carrillo,* 821 S.W.2d at 699.[7]

The prosecutor's statement also concerned the state of the evidence of appellant's intent to kill Gray. The evidence of appellant's intent to kill Gray was overwhelming. Although appellant could not see Gray when he fired the fatal shot, he knew precisely where Gray was because he knew Gray was behind the door and he knew Gray was trying to push the door closed. Just before firing the fatal shot, appellant said, "Are you ready to die." When he was being handcuffed, he told the officers he had already killed everyone he wanted to kill. Thus, the jury had appellant's own statements at the time of the offense clearly showing his intent to kill Gray. No evidence, direct or circumstan-

tial, indicates appellant did not intend to kill Gray when he fired the fatal shot.

Having reviewed the entire record, including the effect of the trial court's instructions in the charge and the court's instruction to disregard the prosecutor's erroneous argument, as well as the overwhelming evidence of appellant's intent, we conclude beyond a reasonable doubt that the prosecutor's objected-to argument did not contribute to appellant's conviction. Accordingly, we conclude the trial court did not err in denying appellant's motion for mistrial. We overrule appellant's fourth point of error.

## CUMULATIVE EFFECT OF ERRORS

In his fifth point of error, appellant contends "the cumulative effect of the errors committed requires a new trial." Appellant's point of error is premised on our finding the trial court erred under his previous points of error. However, as discussed above, the trial court did not err. Accordingly, appellant's argument lacks merit. We overrule appellant's fifth point of error.

We affirm the trial court's judgment.

---

6. Additionally, the jurors were told during voir dire they could not consider the defendant's failure to testify against him, and they indicated by their silence they could follow that proposition of law.

7. In *Carrillo,* this Court reversed appellant's conviction because, during jury argument, the prosecutor commented on the defendant's failure to testify. Although the trial court instructed the jurors to disregard the argument, we did not discuss the effect of the instruction on the error or conduct a harmless error analysis. *See Carrillo,* 821 S.W.2d

at 699–700. Our reasoning in that case may have been consistent with other cases. *See, e.g., Angel,* 627 S.W.2d at 425–26 (reversing without harm analysis). However, subsequent cases have held that prosecutorial comments on a defendant's failure to testify can be cured by an instruction to disregard, rendering any error harmless. *See, e.g., Moore,* 999 S.W.2d at 405–06. Accordingly, *Carrillo*'s application of the law to the facts in that case is no longer correct, and we choose not to follow *Carrillo.*