*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00682-CR

Kyle Martin **PLEDGER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-4164
Honorable Juanita A. Vasquez-Gardner, Judge Presiding

Opinion by: Marialyn Barnard, Justice

Sitting: Sandee Bryan Marion, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed: November 11, 2009

AFFIRMED

In a seventeen-count indictment, Kyle Martin Pledger was charged with the felony offenses of aggravated sexual assault of a child, sexual assault of a child, and indecency with a child by contact and exposure. After the State abandoned the aggravated sexual assault count, a jury found appellant guilty on the remaining counts, and sentenced him to twelve years imprisonment on fourteen counts and ten years imprisonment on two counts. On appeal, Pledger contends (1) the trial

court erred in denying his motion for mistrial, and (2) the evidence was factually insufficient to sustain his conviction on any of the charges. We affirm the trial court's judgment.

## MOTION FOR MISTRIAL

During voir dire and in the presence of the entire panel, venire member number one told Pledger's trial counsel that he did not want to talk to her. He further stated to Pledger, "You know, honestly, you're guilty dude. I'm sorry. I really don't want to be in this courtroom right now." The trial court immediately excused the rest of the panel from the courtroom, and after speaking to venire member number one, the court dismissed him. Pledger's trial counsel moved for a mistrial. Although noting venire member number one's outburst was "down right rude" and "could have potentially poisoned the whole panel," the trial court reserved its ruling. When the rest of the panel returned to the courtroom, the trial court instructed them as follows:

> All right, ladies and gentlemen. What Mr. Trevino did was improper and I would ask you to please disregard what he said. It goes against everything – it goes against everything that we're doing here. A person is presumed innocent until and only if the State is able to prove the case beyond a reasonable doubt. I don't think that's a difficult concept, but please disregard what he said. Thank you."

The next day, the trial court denied Pledger's motion for mistrial. Pledger contends the trial court erred in denying his motion for mistrial, arguing the court's curative instruction was insufficient to cure the harm created by the venire person's outburst.

The denial of a mistrial is reviewed under an abuse of discretion standard. *Archie v. State*, 221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007). A mistrial is an extreme remedy for improper conduct that is "'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (quoting *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003)). The trial court must essentially determine whether

the "improper conduct is so harmful that the case must be redone." *Hawkins*, 135 S.W.3d at 77. In most cases, an instruction to disregard is sufficient to cure any harm. *See, e.g., Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995) (holding that instruction to disregard improper comment by witness on defendant's post-arrest silence generally sufficient to cure any harm); *Brown v. State*, 92 S.W.3d 655, 662 (Tex. App.—Dallas 2002) (concluding instruction to jury cured any harm from witness's improper statement), *aff'd*, 122 S.W.3d 794 (Tex. Crim. App. 2003).

When potentially prejudicial statements are made by a potential juror in front of the entire panel, the court of criminal appeals has held, in the context of a motion to quash the panel, that to obtain reversal, the appellant must show harm by demonstrating (1) the other members of the panel heard the remark, (2) the potential jurors who heard the remark were influenced to the prejudice of the appellant, and (3) the juror in question or some other juror who may have had a similar opinion was forced upon the appellant. *Callins v. State*, 780 S.W.2d 176, 188 (Tex. Crim. App. 1986), *cert. denied*, 497 U.S. 1011 (1990) (citing *Johnson v. State*, 151 Tex. Crim. 110, 205 S.W.2d 773, 774 (1947)). Though *Callins* was decided in the context of a motion to quash, we find it just as applicable when the defendant moves for a mistrial based on improper juror comments during voir dire.

First, we do not find the comment so prejudicial that it could not have been cured by the trial court's instruction. *See Hawkins*, 135 S.W.3d at 77. The trial court made it very clear to the venire members that the outburst they witnessed was wholly improper, and reminded the members Pledger was innocent until the State proved he was guilty. We do not find this single outburst, which was followed by a curative instruction, to be so harmful as to require a new trial.

Second, Pledger has not established any harm as required by *Callins*. We can infer from the record that other members of the venire heard the outburst because it was made in open court and was sufficiently audible for the court reporter to record it. *See McGee v. State*, 923 S.W.2d 605, 606-08 (Tex. App.—Houston [1st Dist.] 1995, no pet.). However, we cannot infer the other potential jurors were influenced by the remark or that those jurors were forced upon Pledger. *See id.* There is nothing in the record to establish the venire members ignored the trial court's instruction or were influenced by the outburst. *See id.* After the dismissal of the juror who made the outburst and in front of the remaining venire, the trial court and Pledger's counsel discussed the importance of juror impartiality. Later, Pledger's counsel polled the venire members, asking them whether they thought Pledger was guilty. None of the panel members responded that they held such a belief. Moreover, all panel members were asked if they could be impartial if selected to serve on the jury. A majority affirmed they could, and the few that voiced an inability to be neutral were ultimately not selected to serve on the jury. Accordingly, we hold any potential prejudice that might have resulted from the outburst was demonstrably cured by the trial court's instruction, and Pledger has failed to establish he suffered any harm as a result of the outburst. *See Callins*, 780 S.W.2d at 188. We overrule Pledger's first issue.

## FACTUAL SUFFICIENCY

In a challenge to the factual sufficiency of the evidence, we look at the evidence in a neutral light, giving almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We reverse only if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust or if the evidence supporting the verdict is outweighed by the great weight and preponderance of the evidence. *Watson*

*v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Our review "must be appropriately deferential so as to avoid the appellate court's substituting its own judgment for that of the fact finder." *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). The fact finder is the exclusive judge of the witnesses' credibility and the weight to be given their testimony and may choose to believe all, some, or none of it. *Moore v. State*, 935 S.W.2d 124, 126 (Tex. Crim. App. 1996).

Pledger was convicted of sexually assaulting a child – his stepdaughter, Cynthia. A person commits sexual assault if he intentionally or knowingly (1) causes the penetration of the anus or sexual organ of a child by any means, (2) causes the penetration of the mouth of a child by the sexual organ of the actor, (3) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor, (4) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor, or (5) causes the mouth of the child to contact the anus or sexual organ of another person, including the actor. Tex. Penal Code Ann. § 22.011(a)(2) (Vernon 2003). He was also convicted of indecency with a child. A person commits indecency with a child by (1) engaging in sexual contact with a child or causing a child to engage in sexual contact, or (2) with the intent to arouse or gratify the sexual desire of anyone, by exposing one's anus or any part of one's genitals knowing a child is present, or by causing a child to expose any part of his or her genitalia or anus. *Id.* § 22.11(a). "Sexual contact" means that with the intent to gratify the sexual desire of any person (1) a person touches, including through clothing, the anus, breast, or any part of the genitals of a child, or (2) a person uses his anus, breast, or any part of his genitals to touch, including through clothing, any part of a child's body. *Id.* § 21.11(c). A "child" is a person younger than seventeen years of age. *Id.* § 22.011(c)(1). Based on the elements

of these offenses, we must now review the evidence to determine whether the evidence is factually sufficient to support Pledger's conviction.

The evidence shows that in 1994, Pledger met a woman named Madeline, and they married about a year later. At the time of her marriage to Pledger, Madeline already had two children, Cynthia and Alex. Cynthia was seven-years-old when her mother married Pledger, and she soon began calling him "dad." After the marriage, the family moved to San Antonio, Texas. In 1998, Pledger and Madeline had a child of their own, Christine.

Cynthia testified that when she was thirteen, Pledger's behavior began to change. She stated he began acting "weird" toward her, and told her he was going to teach her about sex. Pledger gave her a book titled "A Man's Guide to Sex." According to Cynthia, Pledger regularly entered her room and the bathroom and engaged her in sexual conduct. She testified Pledger fondled her breasts, had her put a condom on his erect penis, and had her masturbate him until he ejaculated into her hand. Cynthia also stated that on a daily basis, while her younger sister was napping in the afternoons and her mother was at work, Pledger would sit next to her on the couch and fondle her breasts, and pinch and suck her nipples. He would also remove her shorts and masturbate her, ultimately penetrating her vagina with his finger. Once, he masturbated himself in front of her and after he ejaculated, he took some of his semen and spread it inside her vagina, explaining this created a bond between them.

At times, Pledger would enter the bathroom completely naked while Cynthia was showering. He also got into the bathtub with her a couple of times. When she tried to avoid the living room to escape Pledger's assaults, he would follow her into the kitchen, grab her buttocks under her shorts and fondle her. One time, he inserted his finger into her vagina and "dry humped" her from behind. Cynthia described "dry humping" as Pledger being clothed, but pressing himself against her and

rubbing. He sometimes picked her up and placed her on the kitchen counter where he would insert his finger into her vagina and fondle and kiss her breasts.

Cynthia testified that eventually Pledger's conduct progressed to oral sex in her bedroom. He would have her sit on her bed with her legs open while he used his tongue to lick her vagina, and he would insert his tongue into her vagina. Although he never inserted his penis into her vagina, he touched her vaginal area with it on more than one occasion.

According to Cynthia, Pledger's behavior continued through her high school years. Cynthia stated that she never told anyone because she did not know if her mother could handle it or how Pledger would react. However, in 2005, while she was away at college, Cynthia told a friend who advised her to tell her mother. During a Thanksgiving visit home, Cynthia told her mother about the abuse, but asked her mother not to tell anyone because she was afraid of Pledger. Cynthia testified Pledger claimed to have friends who worked for the Mafia. Madeline agreed not to say anything until Cynthia returned to college. Two days before her eighteenth birthday, Cynthia gave police and child protective services a statement about her sexual contact with Pledger. After the police and child protective services became involved, Madeline filed for divorce.

Pledger denied all of Cynthia's allegations. He claimed his marriage to Madeline had been deteriorating for some time before Cynthia's allegations, and divorce was imminent. He testified he told Madeline that if she refused to go to counseling, he would divorce her, and also told her his attorney said he would get the house, alimony, and full custody of Christine. Pledger claimed this infuriated Madeline. Pledger contended Madeline and Cynthia conspired to create the story about sexual abuse to gain leverage in the divorce and custody battle over Christine. He claimed he was the one who filed for divorce seeking the house, alimony, and custody of Christine.

He testified that because of injuries from a car accident and other health problems, he could not have engaged in some of the sexual activity claimed by Cynthia, and that his injuries resulted in his inability to take care of the household as he had before, prompting Madeline to accuse him of seeing other women in the neighborhood.

Pledger presented Mark Steege as a witness. Steege is a licensed clinical social worker, a professional counselor, and provides treatment to sex offenders. Steege is a member of the American Association for the Treatment of Sexual Abuse ("AATSA"). At Pledger's request, Steege evaluated Pledger "[t]o determine what kind of person Kyle Pledger was and the kind of sexual beliefs he held and the kind of sexual interests he held." Mr. Steege did not find Pledger displayed or manifested a propensity to be sexually attracted to female children. Nor did he find that Pledger manifested or displayed any propensity for violence or antisocial behaviors. However, Mr. Steege admitted that under the policies of the AATSA, he was prohibited from knowingly providing court testimony during the guilt phase of a criminal trial from which a reasonable person could draw inferences as to whether a client did or did not commit a specific sexual offense. Accordingly, he could not provide an opinion as to whether Pledger was guilty or not guilty. He also admitted that part of his testing was based on self-reporting by Pledger.

It was the jury's responsibility to resolve the conflicts in the evidence and weigh the credibility choices. We must "afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Lancon*, 253 S.W.3d at 705. Here, the jury resolved those issues in favor of the State's theory that Pledger sexually assaulted his stepdaughter, and against Pledger's theory that his ex-wife and his stepdaughter conspired to create the story to

gain leverage in the pending divorce and custody matter. Giving deference to the jury's resolution of the credibility issues, the State's evidence that Pledger sexually assaulted his stepdaughter and committed indecency with a child, as charged in the indictment, is not greatly outweighed by evidence to the contrary. *See Lancon*, 253 S.W.3d at 705; *Watson*, 204 S.W.3d at 414-15. Nor was the evidence so weak that the verdict is clearly wrong and manifestly unjust. *See Watson*, 204 S.W.3d at 414-15. Accordingly, we overrule Pledger's second issue and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish