Opinion issued August 30, 2007



In The

*Court of Appeals*

For The

*First District of Texas*

_____

NO. 01-05-00516-CR

_____

FRABON CROCKER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 230th District Court
Harris County, Texas
Trial Court Cause No. 1012896

OPINION

A jury convicted appellant, Frabon Crocker, of aggravated robbery, and, having

pleaded true to two enhancement allegations, he was sentenced to 35 years'

confinement. TEX. PEN. CODE ANN. § 29.03 (Vernon 2003). In four issues, appellant complains that (1) the pre-trial identification procedures used by the Houston Police Department were impermissibly suggestive, (2) "the trial court erred in overruling [his] objection to the prosecutor's comment on [ ] appellant's failure to testify," (3) the trial court improperly defined the standard of proof during voir dire, and (4) he received ineffective assistance of counsel. We reverse and remand for a new trial.

## Background

On January 26, 2004, the complainant, Seyed Tabatabai, opened the flower shop he and his wife owned together. After assisting a few customers, the complainant, who was alone in the store, went into the back office to inventory the store's merchandise. Shortly thereafter, the complainant heard the "clicking" noise of the cash registers and ran out of the office to find a man with his hands in both of the store's registers. The man, startled by the complainant's presence, pointed a gun at the complainant, fled the store, and got into a red van. The complainant chased the man out of the store and attempted to grab the van's passenger-side mirror as it was driving off. During his pursuit of the man, the complainant was able to write the van's license plate number down on his hand, and he provided that information to the police when he reported the robbery.

According to his testimony, the complainant estimated the man to have taken approximately $700 from the store. The complainant also stated that, as the robbery

2

was occurring, he had the opportunity to "look[] into [the robber's] eyes . . . ." When the police identified appellant as the registered owner of the van, they placed his picture in a photo array for the complainant's viewing. The complainant tentatively identified appellant as the man who had robbed his store in the photo array, but asked to view a line-up.

After later viewing a videotaped line-up, the complainant positively identified appellant as the robber. On cross-examination, the complainant admitted that appellant was taller, heavier, and dressed differently than the other line-up participants. In addition, appellant was the only person who appeared in both the photo array and the video line-up. There was testimony from the complainant indicating that, before he viewed the video line-up, the police informed him they had traced the license plate number and "got the person."

At trial, the complainant again identified appellant as the robber. The jury also heard the testimony of three Houston police officers: Officers Hatrick, Chapnick, and Villarreal. Officer Hatrick stated that he had responded to the complainant's 911 call reporting the robbery. Other than the open cash register drawers, Hatrick found no physical evidence of a robbery at the flower shop. He did not call the Crime Scene Unit to come out and investigate the incident. Officer Chapnick testified that, one day, as he was randomly "running plates," he came across a van matching the description and license plate number provided by the complainant. When Chapnick

3

stopped the van, appellant was driving. No weapons were found in appellant's van. Finally, Officer Villarreal testified that he prepared the photo array and line-up for the complainant's viewing. He also confirmed that (1) no fingerprints were taken in the case, (2) the complainant was told before viewing the line-up that the man in the van had been caught, and (3) appellant was taller, heavier, and dressed differently than other line-up participants.

## Comment on Failure to Testify

In his second issue, appellant argues that "the trial court erred in overruling [his] objection to the prosecutor's comment on [ ] appellant's failure to testify." The trial court, however, sustained appellant's objection, and we construe his complaint to be one as to the adverse ruling against him—namely, the trial court's denial of his request for an instruction to the jury to disregard the prosecutor's statement and a mistrial.

In closing arguments, the following exchange occurred:

[Prosecutor]: And I will tell you this: The State and the defense have the same ability to bring in witnesses in this case. The State can subpoena witnesses. The defense can subpoena witnesses. Okay. *You heard from the State's witnesses as to who was there January 26, 2004. And the State's witnesses only.* And I ask that you find him guilty.

[Defense Counsel]: Objection improper jury argument.

[Trial Court]: Sustained.

[Defense Counsel]: I'd ask the jury be instructed to disregard the last statement of the prosecutor. We ask for mistrial.

4

[Trial Court]: Denied.

(Emphasis added.)

**Preservation**

The State argues that appellant's "improper jury argument" objection lacked the specificity required to preserve the error, if any, in the prosecutor's comment on appellant's failure to testify. Texas Rule of Appellate Procedure 33.1 requires that an objection state "the grounds for the ruling that the complaining party [seeks] from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds [are] apparent from the context; . . . ." TEX. R. APP. P. 33.1(a). Here, the specific grounds for appellant's objection were apparent from the context. Moreover, appellant's objection was sustained, and thus apparently understood by the trial court. Any error has been preserved for our review.

Although we agree with the dissenting opinion that the better practice is for an attorney to request an instruction to disregard the objectionable comment followed by a motion for mistrial after the instruction is given, we disagree that error is not preserved merely because the trial attorney chose to assert both those objections concurrently rather than consecutively. To preserve error, an attorney has the burden to make an objection with enough clarity for the court to understand its nature and to obtain an adverse ruling. Both of those requirements are met here. Faced with the dual motions to disregard the objectionable comment and to grant a mistrial, the trial

court had the option to give the instruction and deny the mistrial; or to give the instruction and grant the mistrial; or to deny giving the instruction and grant the mistrial; or to deny giving the instruction and deny the mistrial. The trial court opted for the last choice when it ruled "denied." We, therefore, disagree with the dissenting opinion, which adds a new step for preservation of error that it acknowledges has no foundation in case law.

**Error**

In determining whether this exchange entitled appellant to an instruction to disregard, we must first decide whether the prosecutor's jury argument was improper. Proper jury argument includes: (1) a summary of the evidence, (2) a reasonable deduction from the evidence, (3) an answer to the opponent's argument, or (4) a plea for law enforcement. *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991). A comment on a defendant's failure to testify offends both the Texas and United States constitutions, as well as Texas statutory law. U.S. CONST. amend. V; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 38.08 (Vernon 2005) (providing that "[a]ny defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause").

A prosecutor's comment amounts to an impermissible comment on a

6

defendant's failure to testify only if, when viewed from the jury's standpoint, the comment is manifestly intended to be, or is of such character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify. *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). We must consider the context in which the comment was made. *Id.* It is not sufficient that the comment might be construed as an implied or indirect allusion to a defendant's failure to testify. *Id.* Where the remark calls the jury's attention to the absence of evidence that only a defendant's testimony could supply, however, the conviction is subject to reversal. *See Garrett v. State*, 632 S.W.2d 350, 353 (Tex. Crim. App. 1982) (explaining that "an implied or indirect allusion to the failure of the appellant to testify" is not enough to support error unless the comment calls "for a denial of an assertion of fact . . . that only the appellant was in a position to offer"); *see also Trevino v. State*, 979 S.W.2d 78, 79–80 (Tex. App.—Austin 1998, pet. ref'd) (holding that prosecutor's comment to jury that "[t]wo people were there that night that know what happened, [the defendant] and [the complainant]" emphasized the absence of appellant's testimony and constituted reversible error); *Norton v. State*, 851 S.W.2d 341, 346 (Tex. App.—Dallas 1993, pet. ref'd) (holding that prosecutor's comment to jury that "[t]here were only two people out there and we heard from one of them" was comment on defendant's failure to testify and constituted reversible error).

Here, appellant's theory of the case was that the State failed to meet its burden of proof beyond a reasonable doubt. There was no physical evidence connecting appellant to the robbery. The complainant was the source of all of the evidence offered by the State at trial. For example, the only identity evidence came from the complainant's identification of appellant as the robber in a videotaped line-up and in court, and the investigating officers located appellant through the license plate number the complainant provided. The complainant was the source of the evidence because, as he testified, there were no other employees or customers present in the store at the time of the robbery. That is, he and appellant were, allegedly, the only two people present. As a result, the prosecutor's argument that the jury "heard from the State's witnesses as to who was there . . . [a]nd the State's witnesses only," was an indirect comment on appellant's failure to testify, as it drew the jury's attention to the absence of evidence that only appellant's testimony could supply. *See Garrett*, 632 S.W.2d at 353. The prosecutor's argument thus was improper and warranted an instruction to the jury to disregard.

**Harm**

Because the trial court erred in denying appellant's request for an instruction to disregard, we must determine whether that error was reversible. *See Chimney v. State*, 6 S.W.3d 681, 703 (Tex. App.—Waco 1999, pet. ref'd 2002) (noting that trial court commits error where it sustains objection for improper jury argument but denies

8

request for instruction to disregard improper argument). A violation of the prohibition against commenting on a defendant's silence at trial is not automatically reversible error. *See Madden v. State*, 799 S.W.2d 683, 699 n.28 (Tex. Crim. App. 1990). A careful reading of the rule for reversible error in criminal cases, alongside relevant case law, reveals several types of error that may occur: (1) constitutional error that is not subject to harmless error analysis (i.e. structural error); (2) constitutional error that is harmful; (3) constitutional error that is harmless; (4) non-constitutional error that is harmful (i.e. error that affects a substantial right); and (5) non-constitutional error that is harmless (i.e. error that does not affect a substantial right). *See* TEX. R. APP. P. 44.2; *Thompson v. State*, 89 S.W.3d 843, 851–52 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

Our first task in making a determination as to whether the error requires reversal here is, thus, to determine whether the error is one of constitutional magnitude or merely one that affects a substantial right. *See id.* Here, by drawing the jury's attention to the absence of evidence that only appellant's testimony could supply, the prosecutor's comment offended appellant's privilege against self-incrimination under the U.S. and Texas Constitutions. U.S. CONST. amend. V; TEX. CONST. art. I, § 10. Accordingly, we hold the error to be one of constitutional magnitude. Other courts of appeals have similarly viewed such errors. *See, e.g., Brown v. State*, 92 S.W.3d 655, 665 (Tex. App.—Dallas), *aff'd*, 122 S.W.3d 794

9

(Tex. Crim. App. 2003); *Trevino*, 979 S.W.2d at 80.

Having determined that the error is constitutional error, we next consider whether it is subject to a harmless error review. Structural defects in the trial mechanism "defy analysis by 'harmless-error' standards." *Thompson*, 89 S.W.3d at 853. This is because structural errors, such as the absence of counsel for a criminal defendant, a partial judge, the unlawful exclusion of members of the defendant's race from a grand jury, or violations of the right to a public trial, affect the entire conduct of a trial from beginning to end. *Id.* Stated differently, structural errors are constitutional deprivations which affect the framework within which the trial proceeds, rather than simply errors in the trial process itself. *Id.* Where the record reveals constitutional error in the trial process itself, however, such error is subject to a harmless error review, and we must "reverse a judgment of conviction or punishment unless [we] determine[], beyond a reasonable doubt, that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *Thompson*, 89 S.W.3d at 853.

The error in the instant case arose during the State's closing argument. Although the prosecutor's comment was improper, it was not a structural error that affected the framework within which the trial proceeded. Rather, it was merely an error in the trial process itself. Thus, a Rule 44.2(a) analysis is required, and we apply the standard of review for constitutional errors as set forth in *Harris v. State*,

10

790 S.W.2d 568, 587–88 (Tex. Crim. App. 1989). In applying the harmless error rules, a reviewing court should not focus on the propriety of the outcome at trial. *Id.* "Instead, an appellate court should be concerned with the integrity of the process leading to the conviction." *Id.* The court should examine (1) the source of the error, (2) the nature of the error, (3) whether or to what extent it was emphasized by the State, (4) its probable collateral implications, (5) the weight a juror would probably place upon the error, and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *See id.* In summary, the reviewing court should ask "whether the error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the jurors were able properly to apply law to facts in order to reach a verdict." *Id.*

Turning to the first factor in the *Harris* analysis, we note that the State was the source of the error here. *See id.* at 587. As noted above, during closing arguments, the prosecutor improperly commented on appellant's failure to testify. The State argues that any error was invited by defense counsel's closing arguments, during which defense counsel argued that the State had failed to meet its burden of proof. Specifically, defense counsel emphasized the lack of physical evidence, such as fingerprints or a weapon, and the lack of any scientific investigation. We hold that these defense arguments did not invite the prosecutor's argument. Moreover, to

11

conclude that such an argument invited error in this case would open the door to comments on a defendant's failure to testify in countless criminal prosecutions, in which a defendant merely elects to hold the State to its burden of proof rather than present his own evidence.

Turning to the second factor, we consider the nature of the error. *See id.* The prosecutor's comment on appellant's failure to testify was indirect. There is nothing in the record which indicates that the prosecutor acted intentionally or with any ill will in commenting on appellant's failure to testify. And, in consideration of the third factor, we note that the prosecutor commented only once and did not emphasize the error—albeit because, in part, an immediate objection to the argument was sustained.

Turning to the fourth factor, we consider the probable implications of the error. *See id.* The error occurred during the prosecution's closing arguments in the guilt/innocence phase of trial. The charge, already read to the jury by the trial court and provided to the jury during its deliberations, included an instruction that "[i]n this case, the defendant has elected not to testify and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against him." Moreover, the charge was not the first place the jury encountered this instruction. During voir dire, the jury was similarly informed by both the trial court and defense counsel that "the law says that if an accused elects not to testify, . . . you cannot and must not use

12

it as evidence against him." The jury is presumed to follow these instructions, and, thus, the impact of the prosecutor's statement was likely negated to some extent. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

Turning to the fifth factor, we consider the weight a juror would probably place upon the error. *See Harris*, 790 S.W.2d at 587. As previously stated, the facts here show that the offense was committed at a time when only two persons were allegedly present: the complainant and appellant. No other employees or customers were present in the store at the time of the robbery. There was no physical evidence connecting appellant to the robbery. Further, the complainant was the source of all of the evidence offered by the State at trial. The only identity evidence came from the complainant's identification of appellant as the robber in a videotaped line-up and in court, and the investigating officers located appellant through the license plate number the complainant provided. The statement that the jury had "[h]eard from the State's witnesses. And the State's witnesses only," thus, called the jury's attention to the absence of evidence that only appellant's testimony could supply. While the trial court sustained the improper jury argument objection, it did not instruct the jury to disregard the prosecutor's comment. It is possible then that a juror gave at least some weight to the prosecutor's statement that the jury had heard from the State's witnesses only.

Finally, we consider whether declaring the error harmless would encourage the

13

State to repeat it with impunity. *See id.* Because there is nothing in the record which suggests that the comment was made intentionally, it is not likely that declaring the error harmless in this case would encourage the State to repeat it in subsequent prosecutions. However, we note that the facts here are akin to those in many criminal prosecutions. That is, a crime occurs when there are only two persons present: the victim and the perpetrator. The defendant does not testify at trial, electing instead to hold the State to its burden of proof beyond a reasonable doubt. During closing arguments, the defense presents its theory that the State has failed to meet its burden. To declare a comment on a defendant's failure to testify harmless here has some potential to open the door to similar comments in other cases.

After due consideration of each of the factors in the *Harris* analysis, we cannot say, beyond a reasonable doubt, that the error did not contribute to the conviction or punishment. *See* TEX. R. APP. P. 44.2(a). Most compelling in reaching this conclusion is the possibility that jurors gave some weight to the prosecutor's statement that the jury had heard from the State's witnesses only.

Accordingly, we must sustain appellant's second issue. In light of our disposition of this issue, we need not reach appellant's other issues.

## Conclusion

We reverse the judgment of the trial court and remand for a new trial.

George C. Hanks, Jr.
Justice

Panel consists of Justices Taft, Alcala, and Hanks.

Justice Taft, dissenting.

En banc consideration was requested. *See* TEX. R. APP. P. 41.2(c).

A majority of the Justices of the Court voted to deny en banc consideration. *See id.*

Justices Nuchia, Taft, and Higley dissent from the denial of en banc consideration for the reasons stated in the dissenting opinion. *See* TEX. R. APP. P. 47.5.

Publish. TEX. R. APP. P. 47.2(b).