TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00076-CR






Sean Christopher Brewer, Appellant


v.


The State of Texas, Appellee






FROM COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY

NO. C-1-CR-08-223109, HONORABLE ELISABETH ASHLEA EARLE, JUDGE PRESIDING (1)




M E M O R A N D U M O P I N I O N



 Sean Christopher Brewer was charged with the Class B misdemeanor of driving while
intoxicated. See Tex. Penal Code Ann. § 49.04(a) (West 2003). A jury found him guilty, and the
trial court sentenced him to one year's confinement, probated for two years, and ordered him to pay
a fine of $4,000, of which $3,000 was probated. In 21 points on appeal, Brewer argues that the trial
court erred by: (1) denying his request for an instruction to disregard and motion for mistrial
regarding a comment made by the trial court on Brewer's right not to testify; (2) overruling his
objection to the State's jury argument commenting on Brewer's right not to testify; (3) sustaining
the State's relevancy objection to witness testimony; (4) admitting evidence of drugs possessed by
the passenger in his vehicle; and (5) overruling his motion for new trial challenging the visiting
judge's qualifications. We reverse the trial court's judgment and remand for a new trial.

BACKGROUND

 Sometime between two and two-thirty in the morning on December 14, 2008, Brewer
rear-ended Kyle Blackburn's vehicle while Blackburn was stopped at a red light at the intersection
of Twelfth Street and Rio Grande Street in Austin. (2) The accident caused Blackburn's car to hit the
vehicle immediately in front of her, also stopped at the red light. Blackburn testified that the
collision "totaled" her car and caused both front air bags to deploy. Both Blackburn and her
passenger, William Worthy, testified that they were hit "without any warning" and did not hear any
"screeching" of brakes. Officer Michael Ridge, who investigated the accident, testified that he did
not notice any skid marks or other indications that Brewer applied his brakes prior to the collision. 

 Immediately after the collision, Blackburn called 9-1-1 and exited her car to make
sure the occupants of the other cars were uninjured. Blackburn testified that Brewer remained in his
car with the engine on until the police arrived and that he did not talk to anyone or answer anyone's
questions. Worthy testified that prior to the arrival of the police, Brewer and his passenger,
Clay Powers, were "fumbling around with something" and that Powers, carrying a bag, exited the
vehicle, walked behind a nearby building, and returned to the car without the bag. A backpack
containing drug paraphernalia and marijuana described by Powers as his "personal stash" was
recovered by police from behind the building. Powers admitted that the backpack and its contents
were his. Police also found a plastic bag containing cocaine residue in Powers's pocket. Powers
testified that Brewer did not know that Powers possessed these drugs.

 After arriving at the scene, Ridge spoke with all of the parties involved in the
collision and collected insurance information. Ridge observed that Brewer's balance was "a little
off" when retrieving his insurance documents and that he had to use the car's door to assist him. 
Ridge testified that Brewer exhibited signs of intoxication, including an odor of alcohol, watery,
glassy eyes, slightly slurred speech, and a "confused" story regarding the events of the evening. 
Ridge testified that Brewer, who was employed as a chef, told Ridge that he had taken a nap at
7:00 p.m., began drinking at his house two hours after his nap, and continued drinking on
Sixth Street. Brewer refused to participate in two field-sobriety tests, the horizontal gaze nystagmus
test and the one-leg stand test, and refused to continue a third, the walk-and-turn test, after he stepped
off the line while attempting to place one foot in front of the other. Brewer was arrested for driving
while intoxicated. He refused to provide a breath or blood sample.

 A jury trial was held in which Blackburn, Worthy, and Ridge testified for the State. 
The State also introduced a video recording of the investigation from Ridge's dashboard camera,
depicting Brewer's interaction with Ridge and refusal of the field-sobriety tests.

 During cross-examination of Worthy, Brewer's attorney attempted to question
Worthy about why Brewer kept his engine running while awaiting the police. Counsel suggested
that Brewer may have kept his vehicle on to keep the car's heater running, not because he intended
to flee the scene, as the State had previously implied. Upon the State's objection to a line
of questioning asking Worthy about the mechanics of an automobile heater, the following
exchange occurred:


 THE COURT: Where are we going -- hold it, hold it. What are we
doing? Where are you going with this line of
questioning?

 

 [DEFENSE COUNSEL 1]: I'm trying to show that Mr. Brewer had his car
running because it was cold, and his heater was on not
because he was trying to --

 

 THE COURT: Well, I assume he could testify to that, couldn't he?[ (3)]

 

 [DEFENSE COUNSEL 2]: Objection.

 

 [DEFENSE COUNSEL 1]: I'm sorry?

 

 THE COURT: Are you asking this witness to go ahead and . . .
speculate as to what was in his mind or what he was
doing? Your client?

 

 [DEFENSE COUNSEL 1]: No, I'm not calling for speculation. It's present sense
impression . . . . 


 . . . .


 THE COURT: Let's move on, then.


 At the conclusion of Worthy's testimony, Brewer's counsel, in a discussion at the
bench, moved for a mistrial regarding "the Court's commenting on the defendant testifying, that he
could testify as to what was going on that evening." (4) After the court denied the motion, Brewer
asked to submit a written brief in support of the motion, to which the court replied, "Well, you can
do that later." When the State rested, Brewer presented the court with a hand-written motion
requesting either a mistrial or, in the alternative, a written instruction to the jury to disregard the
court's comments. The court again denied Brewer's motion, stating, "You understand that's going
to be corrected and covered as far as in the charge, right? . . . They're instructed [that] they are not
to consider in any way, form, or fashion [that] he is not testifying . . . ."

 Powers then testified for the defense, stating that Brewer was unaware that Powers
possessed drugs at the time of the accident. Brewer also called Michael Peter Kovich, Brewer's
stepfather, as a witness. Brewer expected Kovich to testify that Brewer's behavior and mannerisms
on the video recording were consistent with Brewer's everyday demeanor and did not indicate
intoxication. The State objected to Kovich's testimony on relevance grounds and the trial court
sustained the objection.

 During the State's closing statement, it argued, "This case today has been about
hiding. All this defendant has done was hide. Every single thing was hiding." Brewer objected,
claiming that the statement was a comment on Brewer's choice not to testify, and the trial court
overruled the objection.

 The jury was then given its charge, which included language stating, "[T]he
Defendant has elected not to testify, and you are instructed that you cannot and must not refer or
allude to that fact throughout your deliberations or take it into consideration for any purpose
whatsoever . . . ." After over five hours of deliberation and a supplemental charge from the court,
the jury found Brewer guilty of driving while intoxicated. The trial court sentenced Brewer to
one year in jail, probated for two years, and a $4,000 fine, of which $3,000 was probated. (5) Brewer
moved for a new trial, arguing, among other things, that the presiding judge lacked the proper
certification as a visiting judge. The trial court denied Brewer's motion for new trial and he
now appeals.

DISCUSSION

 In 21 points on appeal, Brewer argues that the trial court erred by: (1) denying his
motion for mistrial and request for an instruction to disregard the trial court's comment on his right
not to testify; (2) overruling his objection to the State's jury argument commenting on his right not
to testify; (3) sustaining the State's objection to Kovich's testimony; (4) admitting evidence of the
marijuana and cocaine possessed by Powers; and (5) overruling his motion for new trial challenging
the qualifications of the visiting judge.


Judicial Comment

 In points of error one through six, Brewer argues that the trial court's denial of his
motion for mistrial and request for an instruction to disregard the comment was harmful error. 
During Worthy's cross-examination, Brewer's counsel pursued a line of questioning asking why
Brewer kept his engine running while waiting for the police. Upon objection, Brewer's attorney
explained, "I'm trying to show that Mr. Brewer had his car running because it was cold and his
heater was on . . . ." The trial court responded, "Well, I assume he could testify to that, couldn't he?" 
Brewer contends that this question constituted an impermissible comment on his failure to testify
and violated his privilege against self-incrimination.




Preservation of Error

 The State claims that Brewer failed to preserve any error with respect to the denial
of his request for an instruction to disregard because the request was untimely. Brewer immediately
objected to the trial court's comment and orally moved for a mistrial shortly thereafter. At the same
time he orally moved for a mistrial, he requested permission to submit a written brief in support of
his motion. The trial court granted Brewer's request, saying, "Well, you can do that later." The
State then called its last witness. Following the end of this witness's testimony, the State rested and
Brewer presented a written motion entitled "Defendant's Motion for Mistrial and Jury Instruction
Limiting and Excluding Comments Made by the Court in Front of the Jury About Defendant's Right
to Testify." In his motion, Brewer requested that the trial court instruct the jury to disregard the
court's comment.

 Generally, to preserve error a defendant should first object, then request an instruction
to disregard, and finally, move for a mistrial if he believes the instruction to disregard was not
sufficient. Young v. State, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). The only essential
requirement to ensure preservation, however, is a timely, specific request that is refused by the trial
court. Cruz v. State, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007). Though Brewer's actions
following the trial court's comments do not follow the typical objection pattern, his actions were
sufficient to preserve the error for appellate review. (6) Brewer objected immediately upon the trial
court's comment. Though he obtained no immediate ruling, Brewer renewed his objection when he
moved for a mistrial shortly thereafter. The trial court then gave Brewer permission to further argue
his position in a written motion. The trial court accepted Brewer's motion containing both a written
motion for mistrial and a request for an instruction to disregard and denied the combined motion,
stating that the language of the standard jury charge would cure the error. When the trial court
denied Brewer's request for an instruction, the issue was preserved for appellate review.



Error Analysis

 A trial judge's comment on the failure of an accused to testify violates the privilege
against self-incrimination contained in the Fifth Amendment of the Constitution. See U.S. Const.
amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005); see also
Bustamante v. State, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). To violate the right against
self-incrimination, the offending language, when viewed from the jury's standpoint, must be
manifestly intended or be of such a character that the jury would necessarily and naturally take it as
a comment on the accused's failure to testify. Bustamante, 48 S.W.3d at 764; Madden v. State,
799 S.W.2d 683, 699 (Tex. Crim. App. 1990). In applying this standard, we must analyze the
context in which the comments were made to determine whether the language used was of such
character. Bustamante, 48 S.W.3d at 764; Madden, 799 S.W.2d at 699. If the remark called the
jury's attention to the absence of evidence that only testimony from the defendant could supply, the
conviction is subject to being reversed. Madden, 799 S.W.2d at 699 (citing Montoya v. State,
744 S.W.2d 15, 35 (Tex. Crim. App. 1987)).

 Here, after an objection to a line of questioning about Brewer's state of mind in
keeping his car running, the trial court remarked, "Well, I assume he could testify to that, couldn't
he? . . . Are you asking the witness [Worthy] to . . . go ahead and speculate as to what was in his
[Brewer's] mind or what he was doing? Your client?" The trial court's question, "I assume he could
testify to that, couldn't he?" made in the context of a discussion about Brewer's state of mind,
directly called for testimony which only Brewer himself could supply. In its comment, the trial court
brought attention to the fact that Brewer, the only individual who could explain why he kept his car
running--whether to keep the heater on, to potentially flee the scene, or for some other reason--did
not testify. Viewed from the jury's standpoint, this question was a direct comment on Brewer's
failure to testify and violates code of criminal procedure article 38.08 and Brewer's rights under both
the state and federal constitutions. See U.S. Const. amend. V, VI, XIV; Tex. Const. art. I, §§ 10, 13,
19; Tex. Code Crim. Proc. Ann. art. 38.08; Bustamante, 48 S.W.3d at 764.

 Though the trial court's comment violated Brewer's right not to testify, an instruction
to disregard would have cured the trial court's error. See Swallow v. State, 829 S.W.2d 223, 226
(Tex. Crim. App. 1992) ("[T]he general presumption is that an instruction to disregard erroneous
argument or objectionable evidence is sufficient to cure error."). The trial court therefore erred in
denying Brewer's request for an instruction to disregard.


Harm Analysis

 Because the trial court erred in denying Brewer's request for an instruction to
disregard, we must next determine whether the error was reversible. See Madden, 799 S.W.2d at
699 n.28 (rejecting argument that violation of defendant's self-incrimination rights constitutes
automatic reversal). Because the trial court's comment offended Brewer's privilege against
self-incrimination under the United States and Texas Constitutions, the trial court's refusal to give
a curative instruction was an error of constitutional magnitude. See Brown v. State, 122 S.W.3d 794
(Tex. Crim. App. 2003). Further, because this error was an error in the trial process itself, we must
reverse unless we can conclude beyond a reasonable doubt that the error did not contribute to
Brewer's conviction or punishment. See Tex. R. App. P. 44.2(a); see also Crocker v. State,
248 S.W.3d 299, 305-06 (Tex. App.--Houston [1st Dist.] 2007, no pet.). In conducting our
analysis, we apply the standard of review for constitutional errors set forth in Harris v. State, 
790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989).

 When applying a harmless error analysis in reviewing the denial of an instruction to
disregard, a court should examine (1) the source of the comment, (2) the nature of the comment,
(3) whether or to what extent it was emphasized by the State, (4) its probable collateral implications,
(5) the weight a juror would probably place upon the comment, and (6) whether declaring the
comment harmless would encourage the error to be repeated with impunity. See id. In summary,
the reviewing court should ask "whether the error at issue might possibly have prejudiced the jurors'
decision-making; it should ask not whether the jury reached the correct result, but rather whether the
jurors were able properly to apply law to facts in order to reach a verdict." Id.

 We first consider the source and nature of the comment. As discussed above, the trial
court's comment is a clear comment on Brewer's right not to testify. The words and conduct of a
trial court "have a special and peculiar weight" to the jury. Blue v. State, 41 S.W.3d 129, 131 (Tex.
Crim. App. 2000). "Jurors are prone to seize with alacrity upon any conduct or language of the trial
judge which they may interpret as shedding light upon his view of the weight of the evidence, or the
merits of the issues involved." Id. A judge's "'lightest word or intimation is received with
deference, and may prove controlling.'" Id. (quoting Starr v. United States, 153 U.S. 614, 626
(1894)). Considered in context, the trial court's comment was not merely a comment on what
Worthy could or could not testify to, as the State argues. Given the State's prior implications that
Brewer left his car running in order to flee, the trial court's question was a comment on Brewer's
failure to explain why he remained in his car with the engine running after the accident.

 Turning to the third factor in the Harris analysis, whether or to what extent the
comment was emphasized by the State, we note that the State referred to Brewer's behavior
following the accident several times during its closing argument. The State argued that "the only
person who was acting furtive and trying to hide his guilt [following the accident] was the
defendant" and, "This case today has been about hiding. All this defendant has done [is] hide. . . . 
He refused to get out of the car . . . . Because he smelled like alcohol and he had been drinking." 
These comments underscored the trial court's error by asking the jury to infer guilt from Brewer's
failure to explain why he remained in his car.

 Under the fourth and fifth factors of the Harris test, we consider the probable
implications of the comment and the weight a juror would probably place upon it. Though the jury
charge correctly explained the law regarding a defendant's election not to testify, the trial court
denied Brewer's instruction to disregard the comment and there was no attempt to cure the
prejudicial effect of the trial court's comment. Given the trial court's influence on a jury and the fact
that the State emphasized Brewer's "hiding" during its closing argument, it is possible that the jury
afforded the trial court's comment some weight. See Crocker, 248 S.W.3d at 307.

 Finally, we consider whether declaring the error harmless would encourage similar
mistakes to be repeated with impunity. See Colburn v. State, 966 S.W.2d 511, 520 (Tex. Crim. App.
1998). Though nothing suggests that the trial court intentionally commented on Brewer's failure to
testify, we are wary of holding that the trial court's comment was harmless for fear of opening the
door to similar comments in the future.

 After reviewing the record and performing the harm analysis required under Rule
44.2(a), we cannot conclude beyond a reasonable doubt that the trial court's error in denying
Brewer's request for a curative instruction did not contribute to Brewer's conviction. Tex. R. App.
P. 44.2(a). We sustain Brewer's challenge to the trial court's denial of his request for an instruction
to disregard and reverse Brewer's conviction. (7) In light of our disposition of this issue, we need not
reach his remaining appellate points. See Tex. R. App. P. 47.1.


CONCLUSION

 We reverse the trial court's judgment of conviction and remand for a new trial.



 ____________________________________

 Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

 Dissenting Opinion by Justice Goodwin

Reversed and Remanded

Filed: August 31, 2011

Do Not Publish
1. In accordance with the Court's practice, Judge Earle is designated as the presiding judge
because she signed the judgment that is the subject of this appeal. However, the jury trial was
presided over by a visiting judge, the Honorable Bill Bender (retired).
2. The facts recited herein are taken from the testimony and exhibits admitted at trial.
3. Brewer represented in both his motion for mistrial and motion for new trial that the judge
pointed to the defendant when using the word "he."
4. This oral motion for mistrial occurs in the record three pages after the original objection. 
5. Brewer's conditions of community supervision included a $1,000 fine, 100 hours of
community service, completion of a DWI-offender education class, and the installation of an ignition
interlock device on his vehicle.
6. We note that Brewer could not have predicted the trial court's comment, nor could any
preemptive action or objection by defense counsel have prevented the resulting harm.
7. This issue appears in Brewer's brief as point of error number four.