# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00076-CR

**Sean Christopher Brewer, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY
### NO. C-1-CR-08-223109, HONORABLE ELISABETH ASHLEA EARLE, JUDGE PRESIDING[1]

## M E M O R A N D U M   O P I N I O N

Sean Christopher Brewer was charged with the Class B misdemeanor of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a) (West 2003). A jury found him guilty, and the trial court sentenced him to one year's confinement, probated for two years, and ordered him to pay a fine of $4,000, of which $3,000 was probated. In 21 points on appeal, Brewer argues that the trial court erred by: (1) denying his request for an instruction to disregard and motion for mistrial regarding a comment made by the trial court on Brewer's right not to testify; (2) overruling his objection to the State's jury argument commenting on Brewer's right not to testify; (3) sustaining the State's relevancy objection to witness testimony; (4) admitting evidence of drugs possessed by the passenger in his vehicle; and (5) overruling his motion for new trial challenging the visiting judge's qualifications. We reverse the trial court's judgment and remand for a new trial.

---

[1] In accordance with the Court's practice, Judge Earle is designated as the presiding judge because she signed the judgment that is the subject of this appeal. However, the jury trial was presided over by a visiting judge, the Honorable Bill Bender (retired).

**BACKGROUND**

Sometime between two and two-thirty in the morning on December 14, 2008, Brewer rear-ended Kyle Blackburn's vehicle while Blackburn was stopped at a red light at the intersection of Twelfth Street and Rio Grande Street in Austin.[2] The accident caused Blackburn's car to hit the vehicle immediately in front of her, also stopped at the red light. Blackburn testified that the collision "totaled" her car and caused both front air bags to deploy. Both Blackburn and her passenger, William Worthy, testified that they were hit "without any warning" and did not hear any "screeching" of brakes. Officer Michael Ridge, who investigated the accident, testified that he did not notice any skid marks or other indications that Brewer applied his brakes prior to the collision.

Immediately after the collision, Blackburn called 9-1-1 and exited her car to make sure the occupants of the other cars were uninjured. Blackburn testified that Brewer remained in his car with the engine on until the police arrived and that he did not talk to anyone or answer anyone's questions. Worthy testified that prior to the arrival of the police, Brewer and his passenger, Clay Powers, were "fumbling around with something" and that Powers, carrying a bag, exited the vehicle, walked behind a nearby building, and returned to the car without the bag. A backpack containing drug paraphernalia and marijuana described by Powers as his "personal stash" was recovered by police from behind the building. Powers admitted that the backpack and its contents were his. Police also found a plastic bag containing cocaine residue in Powers's pocket. Powers testified that Brewer did not know that Powers possessed these drugs.

---

[2] The facts recited herein are taken from the testimony and exhibits admitted at trial.

After arriving at the scene, Ridge spoke with all of the parties involved in the collision and collected insurance information. Ridge observed that Brewer's balance was "a little off" when retrieving his insurance documents and that he had to use the car's door to assist him. Ridge testified that Brewer exhibited signs of intoxication, including an odor of alcohol, watery, glassy eyes, slightly slurred speech, and a "confused" story regarding the events of the evening. Ridge testified that Brewer, who was employed as a chef, told Ridge that he had taken a nap at 7:00 p.m., began drinking at his house two hours after his nap, and continued drinking on Sixth Street. Brewer refused to participate in two field-sobriety tests, the horizontal gaze nystagmus test and the one-leg stand test, and refused to continue a third, the walk-and-turn test, after he stepped off the line while attempting to place one foot in front of the other. Brewer was arrested for driving while intoxicated. He refused to provide a breath or blood sample.

A jury trial was held in which Blackburn, Worthy, and Ridge testified for the State. The State also introduced a video recording of the investigation from Ridge's dashboard camera, depicting Brewer's interaction with Ridge and refusal of the field-sobriety tests.

During cross-examination of Worthy, Brewer's attorney attempted to question Worthy about why Brewer kept his engine running while awaiting the police. Counsel suggested that Brewer may have kept his vehicle on to keep the car's heater running, not because he intended to flee the scene, as the State had previously implied. Upon the State's objection to a line of questioning asking Worthy about the mechanics of an automobile heater, the following exchange occurred:

3

| | |
|---|---|
| THE COURT: | Where are we going — hold it, hold it. What are we doing? Where are you going with this line of questioning? |
| [DEFENSE COUNSEL 1]: | I'm trying to show that Mr. Brewer had his car running because it was cold, and his heater was on not because he was trying to — |
| THE COURT: | Well, I assume he could testify to that, couldn't he?[3] |
| [DEFENSE COUNSEL 2]: | Objection. |
| [DEFENSE COUNSEL 1]: | I'm sorry? |
| THE COURT: | Are you asking this witness to go ahead and . . . speculate as to what was in his mind or what he was doing? Your client? |
| [DEFENSE COUNSEL 1]: | No, I'm not calling for speculation. It's present sense impression . . . . |
| . . . . | |
| THE COURT: | Let's move on, then. |

At the conclusion of Worthy's testimony, Brewer's counsel, in a discussion at the bench, moved for a mistrial regarding "the Court's commenting on the defendant testifying, that he could testify as to what was going on that evening."[4] After the court denied the motion, Brewer asked to submit a written brief in support of the motion, to which the court replied, "Well, you can do that later." When the State rested, Brewer presented the court with a hand-written motion requesting either a mistrial or, in the alternative, a written instruction to the jury to disregard the

[3] Brewer represented in both his motion for mistrial and motion for new trial that the judge pointed to the defendant when using the word "he."

[4] This oral motion for mistrial occurs in the record three pages after the original objection.

4

court's comments. The court again denied Brewer's motion, stating, "You understand that's going to be corrected and covered as far as in the charge, right? . . . They're instructed [that] they are not to consider in any way, form, or fashion [that] he is not testifying . . . ."

Powers then testified for the defense, stating that Brewer was unaware that Powers possessed drugs at the time of the accident. Brewer also called Michael Peter Kovich, Brewer's stepfather, as a witness. Brewer expected Kovich to testify that Brewer's behavior and mannerisms on the video recording were consistent with Brewer's everyday demeanor and did not indicate intoxication. The State objected to Kovich's testimony on relevance grounds and the trial court sustained the objection.

During the State's closing statement, it argued, "This case today has been about hiding. All this defendant has done was hide. Every single thing was hiding." Brewer objected, claiming that the statement was a comment on Brewer's choice not to testify, and the trial court overruled the objection.

The jury was then given its charge, which included language stating, "[T]he Defendant has elected not to testify, and you are instructed that you cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever . . . ." After over five hours of deliberation and a supplemental charge from the court, the jury found Brewer guilty of driving while intoxicated. The trial court sentenced Brewer to one year in jail, probated for two years, and a $4,000 fine, of which $3,000 was probated.[5] Brewer

---

[5] Brewer's conditions of community supervision included a $1,000 fine, 100 hours of community service, completion of a DWI-offender education class, and the installation of an ignition interlock device on his vehicle.

moved for a new trial, arguing, among other things, that the presiding judge lacked the proper certification as a visiting judge. The trial court denied Brewer's motion for new trial and he now appeals.

## DISCUSSION

In 21 points on appeal, Brewer argues that the trial court erred by: (1) denying his motion for mistrial and request for an instruction to disregard the trial court's comment on his right not to testify; (2) overruling his objection to the State's jury argument commenting on his right not to testify; (3) sustaining the State's objection to Kovich's testimony; (4) admitting evidence of the marijuana and cocaine possessed by Powers; and (5) overruling his motion for new trial challenging the qualifications of the visiting judge.

### Judicial Comment

In points of error one through six, Brewer argues that the trial court's denial of his motion for mistrial and request for an instruction to disregard the comment was harmful error. During Worthy's cross-examination, Brewer's counsel pursued a line of questioning asking why Brewer kept his engine running while waiting for the police. Upon objection, Brewer's attorney explained, "I'm trying to show that Mr. Brewer had his car running because it was cold and his heater was on . . . ." The trial court responded, "Well, I assume he could testify to that, couldn't he?" Brewer contends that this question constituted an impermissible comment on his failure to testify and violated his privilege against self-incrimination.

6

*Preservation of Error*

The State claims that Brewer failed to preserve any error with respect to the denial of his request for an instruction to disregard because the request was untimely. Brewer immediately objected to the trial court's comment and orally moved for a mistrial shortly thereafter. At the same time he orally moved for a mistrial, he requested permission to submit a written brief in support of his motion. The trial court granted Brewer's request, saying, "Well, you can do that later." The State then called its last witness. Following the end of this witness's testimony, the State rested and Brewer presented a written motion entitled "Defendant's Motion for Mistrial and Jury Instruction Limiting and Excluding Comments Made by the Court in Front of the Jury About Defendant's Right to Testify." In his motion, Brewer requested that the trial court instruct the jury to disregard the court's comment.

Generally, to preserve error a defendant should first object, then request an instruction to disregard, and finally, move for a mistrial if he believes the instruction to disregard was not sufficient. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). The only essential requirement to ensure preservation, however, is a timely, specific request that is refused by the trial court. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007). Though Brewer's actions following the trial court's comments do not follow the typical objection pattern, his actions were sufficient to preserve the error for appellate review.[6] Brewer objected immediately upon the trial court's comment. Though he obtained no immediate ruling, Brewer renewed his objection when he

---

[6] We note that Brewer could not have predicted the trial court's comment, nor could any preemptive action or objection by defense counsel have prevented the resulting harm.

7

moved for a mistrial shortly thereafter. The trial court then gave Brewer permission to further argue his position in a written motion. The trial court accepted Brewer's motion containing both a written motion for mistrial and a request for an instruction to disregard and denied the combined motion, stating that the language of the standard jury charge would cure the error. When the trial court denied Brewer's request for an instruction, the issue was preserved for appellate review.

*Error Analysis*

A trial judge's comment on the failure of an accused to testify violates the privilege against self-incrimination contained in the Fifth Amendment of the Constitution. *See* U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005); *see also Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). To violate the right against self-incrimination, the offending language, when viewed from the jury's standpoint, must be manifestly intended or be of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. *Bustamante*, 48 S.W.3d at 764; *Madden v. State*, 799 S.W.2d 683, 699 (Tex. Crim. App. 1990). In applying this standard, we must analyze the context in which the comments were made to determine whether the language used was of such character. *Bustamante*, 48 S.W.3d at 764; *Madden*, 799 S.W.2d at 699. If the remark called the jury's attention to the absence of evidence that only testimony from the defendant could supply, the conviction is subject to being reversed. *Madden*, 799 S.W.2d at 699 (citing *Montoya v. State*, 744 S.W.2d 15, 35 (Tex. Crim. App. 1987)).

Here, after an objection to a line of questioning about Brewer's state of mind in keeping his car running, the trial court remarked, "Well, I assume he could testify to that, couldn't

8

he? . . . Are you asking the witness [Worthy] to . . . go ahead and speculate as to what was in his [Brewer's] mind or what he was doing? Your client?" The trial court's question, "I assume he could testify to that, couldn't he?" made in the context of a discussion about Brewer's state of mind, directly called for testimony which only Brewer himself could supply. In its comment, the trial court brought attention to the fact that Brewer, the only individual who could explain why he kept his car running—whether to keep the heater on, to potentially flee the scene, or for some other reason—did not testify. Viewed from the jury's standpoint, this question was a direct comment on Brewer's failure to testify and violates code of criminal procedure article 38.08 and Brewer's rights under both the state and federal constitutions. *See* U.S. Const. amend. V, VI, XIV; Tex. Const. art. I, §§ 10, 13, 19; Tex. Code Crim. Proc. Ann. art. 38.08; *Bustamante*, 48 S.W.3d at 764.

Though the trial court's comment violated Brewer's right not to testify, an instruction to disregard would have cured the trial court's error. *See Swallow v. State*, 829 S.W.2d 223, 226 (Tex. Crim. App. 1992) ("[T]he general presumption is that an instruction to disregard erroneous argument or objectionable evidence is sufficient to cure error."). The trial court therefore erred in denying Brewer's request for an instruction to disregard.

*Harm Analysis*

Because the trial court erred in denying Brewer's request for an instruction to disregard, we must next determine whether the error was reversible. *See Madden*, 799 S.W.2d at 699 n.28 (rejecting argument that violation of defendant's self-incrimination rights constitutes automatic reversal). Because the trial court's comment offended Brewer's privilege against self-incrimination under the United States and Texas Constitutions, the trial court's refusal to give

9

a curative instruction was an error of constitutional magnitude. *See Brown v. State*, 122 S.W.3d 794 (Tex. Crim. App. 2003). Further, because this error was an error in the trial process itself, we must reverse unless we can conclude beyond a reasonable doubt that the error did not contribute to Brewer's conviction or punishment. *See* Tex. R. App. P. 44.2(a); *see also Crocker v. State*, 248 S.W.3d 299, 305-06 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In conducting our analysis, we apply the standard of review for constitutional errors set forth in *Harris v. State*, 790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989).

When applying a harmless error analysis in reviewing the denial of an instruction to disregard, a court should examine (1) the source of the comment, (2) the nature of the comment, (3) whether or to what extent it was emphasized by the State, (4) its probable collateral implications, (5) the weight a juror would probably place upon the comment, and (6) whether declaring the comment harmless would encourage the error to be repeated with impunity. *See id.* In summary, the reviewing court should ask "whether the error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the jurors were able properly to apply law to facts in order to reach a verdict." *Id.*

We first consider the source and nature of the comment. As discussed above, the trial court's comment is a clear comment on Brewer's right not to testify. The words and conduct of a trial court "have a special and peculiar weight" to the jury. *Blue v. State*, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000). "Jurors are prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon his view of the weight of the evidence, or the merits of the issues involved." *Id.* A judge's "'lightest word or intimation is received with

10

deference, and may prove controlling.'" *Id.* (quoting *Starr v. United States*, 153 U.S. 614, 626 (1894)). Considered in context, the trial court's comment was not merely a comment on what Worthy could or could not testify to, as the State argues. Given the State's prior implications that Brewer left his car running in order to flee, the trial court's question was a comment on Brewer's failure to explain why he remained in his car with the engine running after the accident.

Turning to the third factor in the *Harris* analysis, whether or to what extent the comment was emphasized by the State, we note that the State referred to Brewer's behavior following the accident several times during its closing argument. The State argued that "the only person who was acting furtive and trying to hide his guilt [following the accident] was the defendant" and, "This case today has been about hiding. All this defendant has done [is] hide. . . . He refused to get out of the car . . . . Because he smelled like alcohol and he had been drinking." These comments underscored the trial court's error by asking the jury to infer guilt from Brewer's failure to explain why he remained in his car.

Under the fourth and fifth factors of the *Harris* test, we consider the probable implications of the comment and the weight a juror would probably place upon it. Though the jury charge correctly explained the law regarding a defendant's election not to testify, the trial court denied Brewer's instruction to disregard the comment and there was no attempt to cure the prejudicial effect of the trial court's comment. Given the trial court's influence on a jury and the fact that the State emphasized Brewer's "hiding" during its closing argument, it is possible that the jury afforded the trial court's comment some weight. *See Crocker*, 248 S.W.3d at 307.

Finally, we consider whether declaring the error harmless would encourage similar mistakes to be repeated with impunity. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Though nothing suggests that the trial court intentionally commented on Brewer's failure to testify, we are wary of holding that the trial court's comment was harmless for fear of opening the door to similar comments in the future.

After reviewing the record and performing the harm analysis required under Rule 44.2(a), we cannot conclude beyond a reasonable doubt that the trial court's error in denying Brewer's request for a curative instruction did not contribute to Brewer's conviction. Tex. R. App. P. 44.2(a). We sustain Brewer's challenge to the trial court's denial of his request for an instruction to disregard and reverse Brewer's conviction.[7] In light of our disposition of this issue, we need not reach his remaining appellate points. *See* Tex. R. App. P. 47.1.

## CONCLUSION

We reverse the trial court's judgment of conviction and remand for a new trial.

---

[7] This issue appears in Brewer's brief as point of error number four.

12

_____

                                         Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin
   Dissenting Opinion by Justice Goodwin

Reversed and Remanded

Filed:   August 31, 2011

Do Not Publish